McGregor–Doniger, Inc., peticionaria, *v.* Tribunal Superior de Puerto Rico, Sala de San Juan, Hon. Armindo Cadilla Ginorio, Juez, demandado; Ricardo Cruz, interventor.

Número: O-69-159          Resuelto: 17 de marzo de 1970

*Fiddler, González & Rodríguez* y *Francisco R. De Jesús,* aboga-
dos de la peticionaria; *Otero Suro & Otero Suro* y *Rodrigo
Otero Bigles,* abogados del interventor Ricardo Cruz, Jr.

EL JUEZ ASOCIADO SEÑOR RAMÍREZ BAGES emitió la opinión del
Tribunal.

Debemos resolver en este caso si, al terminar la peticionaria
su contrato suscrito en 1959 con el interventor por virtud del
cual éste convino en promover y vender en Puerto Rico los
productos de aquélla mediante la compensación de una comi-
sión de un 4% sobre embarques netos, debe dársele efectivi-
dad a la cláusula de arbitraje contenida en dicho contrato de
cualquier controversia relacionada con el mismo a su incum-
plimiento, o si los derechos de las partes deben determinarse
exclusivamente de acuerdo con lo dispuesto por la Ley Núm.
75 aprobada por la Asamblea Legislativa de Puerto Rico en
24 de junio de 1964 (10 L.P.R.A. secs. 278 y 278a a 278d).

Se alegó en la demanda en este caso que (1) las partes
otorgaron, efectivo el 1ro. de enero de 1959, un contrato titu-
lado de empleo por virtud del cual el interventor convino, entre
otras cosas, en dedicarse a promover y vender los productos
de la peticionaria en Puerto Rico; aceptar por sus servicios una
comisión de 4% sobre los embarques netos; y asumir toda la
responsabilidad por la distribución de la mercancía en Puerto
Rico. Se convino que el contrato terminaría el 31 de diciembre
de 1959 ó antes al dar una parte a la otra aviso escrito por
correo certificado con 30 días de anticipación; no obstante, si
al expirar el contrato el "empleado" continuaba prestando sus
servicios, los términos del contrato aplicarían a tal empleo
continuado; (2) que el contrato se rige por las leyes de Nueva
York y "toda controversia o reclamación que surja de, o que

esté relacionada con dicho contrato o su violación o con empleo bajo el mismo, será resuelta por arbitraje en la ciudad de Nueva York de acuerdo con las Reglas de la Asociación Americana de Arbitraje y se dictará sentencia, de acuerdo con el laudo rendido por cualquier tribunal que tuviere jurisdicción de la materia; (3) dicho contrato fue terminado por la demandada, efectivo el 7 de enero de 1967, sin causa o motivo alguno que lo justificara; la carta al efecto da como razón que "debido a cambios que ahora se están haciendo en nuestra representación de ventas a través del mundo. . . ." que "Lamentamos que nuestros esfuerzos durante la pasada temporada no han generado el volumen de ventas que ambos hubiéramos querido. Sin embargo, aprecian el interés que ud. siempre han demostrado en McGregor. . . ."; (4) que el interventor aumentó las ventas de los productos de la peticionaria de $75,000 antes del contrato a $192,000 en 1965; que bajaron a $130,000 en 1966 por no haberse despachado órdenes considerables a un cliente; (5) que la peticionaria se niega a pagar al interventor comisiones sobre ventas correspondientes a 1967 y por la cancelación del contrato según lo dispone la Ley Núm. 75 aprobada en 24 de junio de 1964, por lo que le adeuda $43,365.60.

Negó la peticionaria (1) que el interventor fuera un representante y agente exclusivo para el territorio de Puerto Rico bajo el referido contrato; (2) que el interventor cumpliera diligentemente con todas sus obligaciones; (3) que el contrato fuera terminado sin causa o motivo alguno que lo justificara; (4) que hubiera aumentado las ventas en las cantidades alegadas y (5) la reclamación en cuestión. Como defensas especiales, alegó la peticionaria que (a) el interventor se comprometió a actuar como empleado y por lo tanto no puede acogerse a la referida Ley 75 aprobada para proteger a distribuidores y no a empleados de casas manufactureras; (b) las partes acordaron someter a arbitraje toda controversia

que pudiera surgir bajo el contrato; y (c) las relaciones contractuales de las partes deben regirse por las leyes de Nueva York como lo acordaron en el contrato; y (d) la Ley Núm. 75 es inconstitucional y su aplicación a este caso también lo es.

Solicitada mediante moción la suspensión de los procedimientos hasta tanto se haya procedido al arbitraje pactado entre las partes, a lo que se opuso el interventor porque la acción se basa en una violación de las disposiciones de la Ley Núm. 75 y que el celebrar el arbitraje en Nueva York sería sumamente oneroso para el interventor, el tribunal de instancia dictaminó que la Ley Núm. 376 de 8 de mayo de 1951 (32 L.P.R.A. sec. 3201) regula el procedimiento de arbitraje comercial en Puerto Rico; que dicha ley no concede facultad al tribunal para ordenar que se lleve a cabo un procedimiento de arbitraje fuera de esta jurisdicción; que como el tribunal no puede "ordenar que proceda el procedimiento de arbitraje en el Estado de Nueva York, sería injusto paralizar los procedimientos en este caso." En reconsideración el tribunal de instancia se reafirmó en su negativa de suspender los procedimientos con el fin de que se llevase la controversia entre las partes a arbitraje en vista de la política pública enmarcada en la referida Ley Núm. 75 y de que muchos tribunales estatales se han negado a ordenar el arbitraje en una jurisdicción distinta a la del foro bajo la teoría de que un soberano no ordenará a sus ciudadanos a presentarse ante otro soberano a arbitrar sus disputas.

La peticionaria apunta que el tribunal de instancia incidió al resolver que en vista de que la citada Ley Núm. 376 no faculta al tribunal a ordenar la celebración del arbitraje en Nueva York, resultaría injusto paralizar los procedimientos en este caso.

En apoyo de este apuntamiento, arguye la peticionaria que en *Hilti, Inc.* v. *Oldach,* 392 F.2d 368 (1st Cir. 1967), se dictaminó que procedía paralizar los procedimientos en una acción

radicada en el tribunal de distrito de los Estados Unidos para Puerto Rico en que alegaba la terminación de un contrato de distribución en violación de la Ley Núm. 75 *supra*, hasta que se celebrara el arbitraje provisto por el contrato en el estado de Connecticut; que el poder de los tribunales para ordenar que se paralicen los procedimientos hasta que se lleve a cabo el arbitraje no está predicado en la facultad judicial de compeler el arbitraje en otra jurisdicción; que la ley de arbitraje que cobija la controversia es la ley de arbitraje federal pues se trata de una transacción en el comercio interestatal (9 U.S. C.A. secs. 1 y 2); que de no aplicar la ley de arbitraje federal aplica la del estado de Nueva York pues fue la escogida por las partes; que las doctrinas actuales al efecto de que tanto los tribunales estatales como los federales gozan de facultad para paralizar los procedimientos hasta tanto las partes inicien el arbitraje en el foro pactado; que el argumento de que esto derrotaría la política pública fue rechazado en *Hilti, Inc.* supra.

Sostiene el interventor que (1) esta acción no surge de una interpretación del contrato en cuestión sino de su terminación sin justa causa en contravención a lo dispuesto en la Ley 75 *supra*; (2) por acción de la peticionaria cesó la relación contractual entre las partes y, por lo tanto, "entra inmediatamente en todo su vigor la Ley Núm. 75 de 1964 según enmendada"; (3) no estamos obligados por lo resuelto en los tribunales federales pues a los tribunales del Estado Libre Asociado corresponde interpretar y darle el alcance necesario a la ley local que gobierna el caso; (4) ni la ley de arbitraje federal ni la de Puerto Rico obliga a un tribunal ordenar un arbitraje fuera de su jurisdicción; (5) la peticionaria contestó la demanda, tomó deposiciones al interventor, se aprovechó del método de descubrimiento de prueba y obtuvo permiso para alegar una defensa adicional por lo que renunció al derecho de arbitraje; que el celebrar el ar-

bitraje en Nueva York, es sumamente oneroso para el interventor.

La peticionaria arguye que su actuación en este caso no puede interpretarse como una renuncia de su derecho a exigir el arbitraje pactado; indica que según *Hilti, Inc.* supra, los tribunales han sido renuentes en reconocer una renuncia de arbitraje.

■ 1.—De entrada debemos resolver si la peticionaria renunció a su derecho de arbitraje. Concluimos que no. El peso de establecer tal renuncia recae sobre el interventor. Existe una política vigorosa en favor del arbitraje y una marcada renuencia de los tribunales en concluir que se ha incurrido en una renuncia del derecho de arbitraje. *Hilti, Inc.* supra. Toda duda que pueda existir debe ser resuelta a favor del arbitraje. *Galt* v. *Libbey Owens Ford Glass Co.*, 376 F.2d 711 (7th Cir. 1967).

■ Se alega que la contestación a la demanda, la alegación de defensas especiales y la toma de deposiciones son actos inconsistentes con el derecho de arbitraje y, por lo tanto, tales actuaciones de participación activa en el litigio constituyen una renuncia del derecho de arbitraje.

Este caso se distingue del de *Cornell & Company* v. *Barber & Ron Company*, 360 F.2d 512 (D.C. Cir. 1966), en que en éste último no se invocó el arbitraje en la contestación y además se llevaron a cabo múltiples actuaciones de participación activa en el litigio inconsistentes con el derecho de arbitraje. *Gahon Iron Works & Mfg. Co.* v. *J. D. Adam Co.*, 128 F.2d 411 (7th Cir. 1942) no es de aplicación pues resolvió que el demandante había renunciado al derecho de arbitraje al optar por litigar la cuestión en los tribunales.

Las actuaciones de la peticionaria no constituyeron una renuncia de su derecho de arbitraje pues en su primera alegación en el caso invocó tal derecho y solicitó la suspensión de los procedimientos hasta que se procediese al arbitraje pactado en el contrato. Sus actuaciones subsiguientes fueron

limitadas y no inconsistentes con su posición inicial de insistir en el arbitraje. *Hilti, Inc.* supra; *Robert Lawrence Co.* v. *Devonshire Fabrics, Inc.*, 271 F.2d 402, 412 (2d Cir. 1959); *Almacenes Fernández, S.A.* v. *Golodeltz*, 148 F.2d 625, 627 (2d Cir. 1945).

2.—Como el contrato en cuestión envuelve una transacción en el comercio interestatal, su disposición con respecto a arbitraje se rige por la ley federal de arbitraje. Dicha ley federal autoriza la suspensión de los procedimientos a los fines de que se proceda al arbitraje de conformidad con el convenio (9 U.S.C.A. Sec. 3) *Prima Paint Corp.* v. *Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1966). La ley de arbitraje de Puerto Rico contiene una disposición casi idéntica a ésta (32 L.P.R.A. sec. 3203).

3.—El hecho de que se haya convenido el arbitraje en otro foro no constituye impedimento para que se suspendan los procedimientos en un litigio hasta que se proceda con un arbitraje de las cuestiones en controversia de conformidad con una estipulación sobre arbitraje previamente convenida por las partes. *Hilti, Inc.* supra; *Gutiérrez* v. *Union Pacific Railroad*, 372 F.2d 121 (10th Cir. 1966); *Armtorg Trading Corp.* v. *Camden Fiber Mills*, 109 N.E.2d 606 (N.Y. 1952); *Shanferoke Coal & Supply Corp.* v. *Westchester S. Corp.*, 70 F.2d 297 (2d Cir. 1934).

Es aparente de las alegaciones que la terminación del contrato en este caso "debido a cambios que ahora estamos haciendo en nuestra representación de ventas en todo el mundo" es causa para terminarlo pues en el contrato se pactó que podía terminarse mediante aviso escrito dado con 30 días de anticipación. Pero también es claro que tal causa o razón no es la "justa causa" que permite la terminación de un contrato de distribución de acuerdo con lo dispuesto en la Ley Núm. 75, *supra*. (¹)

No obstante, de acuerdo con la ley federal de arbitraje procede que se suspendan los procedimientos en este caso hasta que se determine mediante el arbitraje convenido (1) la naturaleza y efectividad del contrato en cuestión; (2) la relación de las partes bajo dicho contrato; (3) si hubo justa causa según la Ley Núm. 75, *supra*, para terminarlo; (4) si se deben las comisiones alegadas en el hecho 4 de la demanda; (5) cualquier otra controversia que haya surgido y esté pendiente entre las partes bajo dicho contrato.

Debe entenderse, sin embargo, que concluido dicho arbitraje, los procedimientos en este caso podrán continuarse en forma y manera no inconsistente con el laudo arbitral, debiéndose determinar inicialmente la aplicabilidad de la Ley Núm. 75 al contrato en cuestión así como su constitucionalidad.

*Por lo tanto deben revocarse las resoluciones del Tribunal Superior, Sala de San Juan de 2 de octubre de 1968 y 24 de junio de 1969 y ordenarse la suspensión de los procedimientos en este caso hasta que se haya procedido con el arbitraje de conformidad con lo pactado en el contrato en cuestión.*

El Señor Juez Presidente y el Juez Asociado Señor Hernández Matos no intervinieron. Los Jueces Asociados Señores Santana Becerra y Dávila concurren en el resultado sin opinión.

---

(1) El Art. 1 de la Ley Núm. 75 define justa causa como el incumplimiento de alguna de las obligaciones esenciales del contrato de distribución por parte del distribuidor o cualquier acción u omisión por parte de éste que afecte adversamente y en forma sustancial los intereses del principal o concedente en el desarrollo del mercado o distribución de la mercancía o servicios.