WORLD FILMS, INC., ETC., demandantes y recurridos, v. PA-
RAMOUNT PICTURES CORPORATION, ETC., demandados y
recurrentes.

*Número:* CE-87-359     *Resuelto:* 31 de enero de 1990

*Mario Arroyo Dávila*, de *Fiddler, González & Rodríguez*, abogado de los recurrentes; *Jorge Antonio González Lugo*, de *Cordero & González*, abogado de los recurridos.

LA JUEZ ASOCIADA SEÑORA NAVEIRA DE RODÓN emitió la opinión del Tribunal.

En *Walborg Corp. v. Tribunal Superior*, 104 D.P.R. 184, 190 (1975), resolvimos que no puede concedérsele a una cláusula de arbitraje mayor fuerza que a la política pública de protección a los distribuidores, representada por la Ley so-

bre Contratos de Distribución de Puerto Rico, Ley Núm. 75 de 24 de junio de 1964, según enmendada, 10 L.P.R.A. sec. 278 *et seq.* Acogimos la doctrina sentada en *Pullman, Incorporated v. Phoenix Steel Corporation*, 304 A.2d 334 (Del. 1973), a los efectos de que la Ley Federal de Arbitraje, 9 U.S.C. sec. 1 *et seq.*, es de aplicación a los tribunales federales y, por ende, los tribunales estatales no están obligados a aplicarla. Debido al desarrollo posterior en la jurisprudencia del Tribunal Supremo de Estados Unidos y por los fundamentos que discutimos en esta opinión, nos vemos precisados a revocar nuestra decisión en *Walborg Corp. v. Tribunal Superior*, supra, y declarar que, en tanto y en cuanto el Art. 3-B de la Ley sobre Contratos de Distribución de Puerto Rico, 10 L.P.R.A. sec. 278b-2, conflija en su aplicación con la Ley Federal de Arbitraje, prevalecerá esta última. Véase R. Serrano Geyls, *Derecho Constitucional de Estados Unidos y Puerto Rico*, Río Piedras, Ed. C. Abo. P.R., 1986, Vol. I, págs. 410–420. Veamos.

## I

World Films, Inc. (en adelante World) es una corporación que se dedica a la distribución de películas. La Paramount Pictures Corporation (en adelante Paramount) es una corporación con oficinas en San Juan dedicada también a la distribución de películas. La codemandada y también recurrente Atlantic International (en adelante Atlantic) es una sociedad anónima con oficinas en Los Angeles, California, que se dedica a la subcontratación en la distribución de películas.

World presentó demanda al amparo de la Ley Núm. 75, *supra*, contra las recurrentes Paramount[1] y Atlantic. En la misma se solicitó orden de entredicho provisional e *injunc-*

[1] La reclamación contra Paramount Pictures Corporation se fundamentó en interferencia torticera con las relaciones contractuales entre Atlantic International y World Films, Inc.

*tion* preliminar y permanente para que se declarara válido el contrato entre World y Atlantic —reconociéndose así la existencia de un contrato de distribución a tenor con la Ley Núm. 75, *supra*— y para que se concedieran daños. Alegó, en síntesis, que durante 1986 acordó verbalmente renovar el contrato suscrito en 1985 con la Atlantic mediante el cual World sería distribuidora exclusiva de todas las películas mercadeadas por Atlantic, y que Atlantic incumplió.

En abril de 1986, la Paramount notificó a World que distribuiría algunas películas pertenecientes a la Atlantic. World exigió entonces a la Atlantic el cumplimiento del alegado contrato verbal bajo el cual World "distribuiría todo el producto fílmico que [Atlantic] tenía disponible para el año 1986, bajo los mismos términos y condiciones que el año anterior".(²) Por su parte, Atlantic negó la existencia de dicho contrato. Tanto Atlantic como la Paramount comparecieron para solicitar la desestimación y paralización de los procedimientos y que se ordenara dar estricto cumplimiento al arbitraje pactado. Alegaron que el contrato escrito entre Atlantic y World, de 20 de agosto de 1985, contenía una cláusula en la cual se acordó que "cualquier controversia o reclamación entre las partes sobre esos acuerdos o cualesquiera otros acuerdos, obligatoriamente se tendría que dilucidar en arbitraje conforme a las reglas y procedimiento de la American Film Marketing Association". (Énfasis suprimido.)(³)

---

(²) Moción en cumplimiento de orden de World de 8 de julio de 1989. Anejo 1, pág. 2.

(³) Moción de desestimación y/o de sentencia sumaria parcial y solicitud de paralización de procedimientos. Anejo 2, pág. 20.

La Cl. 31 del contrato entre World y Atlantic señala lo siguiente:

"*ARBITRATION; APPLICABLE LAW; SERVICE OF PROCESS.* This Agreement is entered into pursuant to the laws of the State of California and shall be interpreted in accordance with the laws applicable to agreements entered into and wholly performed therein. *Any controversy or claim arising out of or relating to this Agreement or any other motion picture license agreement between Licensor, and any of its affiliated companies, and Distributor, or any of*

World replicó apoyándose en lo resuelto en *Walborg Corp. v. Tribunal Superior*, supra, a los efectos de que la referida cláusula, al igual que la cláusula en controversia en *Walborg Corp. v. Tribunal Superior*, supra, cedía ante los intereses protegidos por la Ley Núm. 75, *supra*, la cual declara nula toda estipulación que obligue a un distribuidor a arbitrar o litigar fuera de Puerto Rico cualquier controversia que surja en torno a un contrato de distribución mediante la cual se renuncie a la aplicación de las leyes de Puerto Rico.(4) El tribunal de instancia, en virtud de lo resuelto en *Walborg*

---

*its assigns thereunder; or the validity, construction or performance of this Agreement or such other agreement, or the breach thereof, shall be resolved by arbitration in accordance with the rules and procedures of the American Film Marketing Association ('AFMA')* as such may be amended from time to time, which rules and procedures are incorporated into and made a part of this Agreement by reference. The parties agree to abide by and perform in accordance with any award rendered by the arbitrator in such arbitration proceedings and that judgments of a court having jurisdiction may be entered upon such award. In the event such rules and procedures of AFMA do not exist at the time such a claim arises, Distributor hereby consents to the jurisdiction of the State and Federal Courts in the County of Los Angeles, California and Distributor hereby irrevocably appoints ——————————— of Los Angeles, California, or the Secretary of State of the Sate of California, as its agent to receive of process in connection with any action between Licensor and Distributor arising out of this Agreement which is brought by Licensor in a State or Federal Court in California. In the event the blank space in this Paragraph is not filled in, Distributor shall be deemed to have appointed the Secretary of State of the State of California as its said agent. The prevailing party in any such arbitration or action shall be entitled to recover all of its costs and suit, including attorney's fees." (Énfasis nuestro.) Anejo 2, págs. 47 y 73.

(4) Art. 3-B de la Ley sobre Contratos de Distribución de Puerto Rico, 10 L.P.R.A. sec 278b-2, establece lo siguiente:
"*Sec. 278b-2. Interpretación de conformidad con las leyes del Estado Libre Asociado*
"Los contratos de distribución a que se refiere el presente Capítulo se interpretarán de conformidad con, y se regirán por las leyes del Estado Libre Asociado de Puerto Rico, siendo nula toda estipulación en contrario.
"Se considerará igualmente en contravención a la política pública que informa este Capítulo, y por ende nula e inexistente, toda estipulación que obligue a un distribuidor a dirimir, arbitrar o litigar fuera de Puerto Rico, o bajo leyes o reglas de derecho foráneas, cualquier controversia que surja en torno a su contrato de distribución."

*Corp. v. Tribunal Superior,* supra, acogió el planteamiento de World y se negó a desestimar o a paralizar el pleito.

Mediante el mecanismo de orden para mostrar causa, ordenamos a los demandantes recurridos demostrar la razón por la cual no se debía expedir el auto y desestimar la demanda. Los demandantes han comparecido y, estando en posición de decidir, resolvemos sin ulteriores procedimientos.

## II

En *Walborg Corp. v. Tribunal Superior,* supra, nos enfrentamos a una situación muy parecida a la del caso de autos. Allí un distribuidor presentó demanda por razón de terminación unilateral del contrato en violación ä la Ley Núm. 75, *supra.* Walborg Corp. solicitó la desestimación del recurso, alegando que el convenio entre las partes hacía obligatorio el arbitraje en la resolución de controversias relacionadas con el contrato de distribución. Apoyados en *Wilko v. Swan,* 346 U.S. 427 (1953), y en *Pullman, Incorporated v. Phoenix Steel Corporation,* supra, decidimos que las cláusulas de arbitraje en contratos de distribución ceden ante los derechos sustantivos que confiere la Ley Núm. 75, *supra,* a los distribuidores.

La Ley Federal de Arbitraje establece una política federal en favor del arbitraje. *Moses H. Cone Hospital v. Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983). Ésta aplica a contratos en el comercio interestatal y establece que las cláusulas de arbitraje en un contrato de esa índole serán válidas, irrevocables y mandatorias.(5) Una vez acordado el ar-

---

(5) La Ley Federal de Arbitraje, 9 U.S.C. sec. 2, establece lo siguiente:

"A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing

bitraje, los tribunales carecen de discreción y tienen que dar cumplimiento al arbitraje acordado. *Byrd v. Dean Witter Reynolds, Inc.*, 470 U.S. 213 (1985); *Southland Corp. v. Keating*, 465 U.S. 1 (1984). Más aún, cualquier duda sobre el alcance de las controversias que pueden ser llevadas a arbitraje debe resolverse a favor del arbitraje. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 626 (1985); *Perry v. Thomas*, 482 U.S. 483, 493 esc. 9 (1987).

▮ En *Southland Corp. v. Keating*, supra, pág. 16, el Tribunal Supremo de Estados Unidos estableció que la Ley Federal de Arbitraje aplica tanto en los tribunales federales como en los estatales:

> In creating a substantive rule applicable in state as well as federal courts, Congress intended to foreclose state legislative attempts to undercut the enforceability of arbitration agreements. (Escolio omitido.)

▮ No obstante, en *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 485 U.S. 976 (1988), se resolvió que si las partes acordaban que el acuerdo de arbitraje se regía por la ley de un estado, en ese caso California, la Ley Federal de Arbitraje no ocupaba el campo y podía aplicarse la ley de arbitraje estatal que permitía a los tribunales, bajo ciertas circunstancias, ordenar la paralización del proceso de arbitraje.(6) Véase Serrano

---

controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

(6) Se ha sugerido como alternativa para los problemas que los distribuidores confrontan al aplicarse estas normas lo siguiente:

"In negotiating contracts involving interstate commerce, practitioners representing parties who would prefer, and are in a bargaining position enabling them to insist upon, the application of state law, should not leave the matter up to state or federal court interpretation. Boilerplate clauses specifying 'the law of the place where the Project is located' should be replaced with clauses requiring the

Geyls, *op. cit.* El Tribunal federal reafirmó así la norma establecida en *Prima Paint v. Flood & Conklin*, 388 U.S. 395 (1967), de que la Ley Federal de Arbitraje simplemente requiere que los tribunales hagan cumplir los acuerdos de arbitraje negociados por las partes, como cualquier otro contrato, de acuerdo con sus términos. El Tribunal Supremo federal expresó lo siguiente:

> In recognition of Congress' principal purpose of ensuring that private arbitration agreements are enforced according to their terms, we have held *that the FAA pre-empts state law which "require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration."* . . . But it does not follow that the FAA prevents the enforcement of agreements to arbitrate under different rules than those set forth in the Act itself. Indeed, such a result would be quite inimical to the FAA's *primary purpose of ensuring that private agreements to arbitrate are enforced according to their terms* . . . . Where, as here, the parties have agreed to abide by state rules of arbitration, enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA, even if the result is that arbitration is stayed where the Act would otherwise permit it go forward. By permitting the courts to "rigorously enforce" such agreements according to their terms . . . we give effect to the contractual rights and expectations of the parties, without doing violence to the policies behind by the FAA. (Citas omitidas y énfasis nuestro.)

---

application of the 'state law' of the appropriate state." *Arbitration Choice of Law, Clauses, Preemption*, IV (Núm. 3) *Federal Litigator* 74 (1989).

También deberá tenerse presente la siguiente observación hecha por el Tribunal Supremo federal en *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987):

"Absent a well-founded claim that an arbitration agreement resulted from the sort of fraud or *excessive economic power that 'would provide grounds for the revocation of any contract,'* . . . the Arbitration Act 'provides no basis for disfavoring agreements to arbitrate statutory claims by skewing the otherwise hospitable inquiry into arbitrability.'" (Énfasis nuestro y citas omitidas.)

■ En *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, supra, el Tribunal federal culminó una serie de decisiones a favor del arbitraje, resolviendo que incluso serían objeto de arbitraje las reclamaciones fundadas en derechos estatutarios de así haberlo pactado las partes. E. Morgan, *Contract Theory and the Sources of Rights: An Approach to the Arbitrability Question*, 60 S.C.L. Rev. 1059.[7] El Tribunal federal señaló lo siguiente: "By agreeing to arbitrate a statutory claim, a party does not forego the substantive rights afforded by the statute; it only submits to the resolution in an arbitral, rather than a judicial, forum." *Mitsubishi Corp. v. Chrysler-Plymouth*, supra, pág. 628.

Recientemente, en *Rodríguez de Quijas v. Shearson/Am. Exp.*, 490 U.S. 477 (1989), el Tribunal, siguiendo la trayectoria en favor del arbitraje, revocó a *Wilko v. Swan*, supra, por ser incompatible con *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220 (1987), y con la línea de decisiones del propio Tribunal que favorecen el arbitraje. El Tribunal expresó lo siguiente:

It also would be undesirable for the decisions in Wilko and McMahon to continue to exist side by side. Their inconsistency is at odds with the principle that the 1933 and 1934 Acts should be construed harmoniously because they "constitute interrelated components of the federal regulatory scheme governing transactions in securities." . . . In this case, for example, petitioners' claims under the 1934 Act were subjected to arbitration, while their claim under the 1933 Act was not permitted to go to arbitration, but was required to proceed in

---

[7] En este caso, el Tribunal Federal de Apelaciones para el Primer Circuito determinó que la Ley Núm. 75 de 24 de junio de 1964, según enmendada, 10 L.P.R.A. sec. 278 *et seq.*, violaba la cláusula de supremacía al entrar en conflicto con la Ley Federal de Arbitraje, 9 U.S.C. sec. 1 *et seq.* El Tribunal Supremo dejó *quaere* esta controversia por no haber sido traída ante ese Foro por Soler. Se limitó a citar el caso de *Southland Corp. v. Keating*, 465 U.S. 1 (1984), donde se resolvió que una ley de California que entraba en conflicto con la Ley Federal de Arbitraje violaba la cláusula de supremacía.

court. (Citas omitidas.) *Rodríguez de Quijas v. Shearson/Am. Exp.*, supra, pág. 537.

El caso versaba sobre un contrato de compra de valores que contenía una cláusula de arbitraje. El Tribunal se había negado a paralizar los procedimientos en el foro judicial y a ordenar el arbitraje, fundamentándose en lo dispuesto por la Ley de Reglamentación de Valores de 1933 (9 U.S.C. sec. 3) que prohibía obligar a un comprador a renunciar a su derecho de seleccionar el foro en el cual se dilucidarían las controversias relacionadas con el contrato. Cabe señalar que ya en *Shearson/American Express, Inc. v. McMahon*, supra, el Tribunal había interpretado que una reclamación bajo la Ley de Valores de 1934 (15 U.S.C. sec. 78 *et seq.*) era arbitrable.

A pesar de la política federal de promover el uso del arbitraje, este mecanismo se utilizará sólo si las partes así lo han pactado y en la forma en que lo hayan pactado. *Steelworkers v. Warrior & Gulf Co.*, 363 U.S. 574 (1960);(8) *Prima Paint v. Flood S. Conklin*, supra; *Volt Information Sciences Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, supra.

■ En *AT&T Technologies v. Communications Workers*, 475 U.S. 643 (1986), se estableció que la "arbitrabilidad" de una controversia, esto es, la determinación de si un acuerdo crea el deber de las partes de arbitrar una controversia en particular, es tarea judicial.(9) Existe, sin embargo,

---

(8) "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Steelworkers v. Warrior & Gulf Co.*, 363 U.S. 574, 582 (1960).

(9) En *National R.R. Passenger Corp. v. Boston S. Maine Corp.*, 850 F.2d 756 (D.C. Cir. 1988), el tribunal elaboró una interesante distinción entre tres categorías arbitrables: (1) controversias en torno a la formación del contrato (la determinación de si las partes acordaron someterse a arbitraje); (2) controversias en torno a la amplitud del contrato (determinación de cuáles son las controversias que las partes pactaron arbitrar), y (3) controversias sobre la duración (determinación de si las partes acordaron someter a arbitraje la duración o expiración del contrato).

una presunción de "arbitrabilidad" cuando el contrato tiene una cláusula de arbitraje:

> [W]here the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage". *AT&T Technologies v. Communications Workers*, supra, pág. 650.

■ En síntesis, la naturaleza y extensión de los poderes del árbitro están delimitados por el lenguaje y la intención del acuerdo de arbitraje. Como regla general, cuando la cláusula de arbitraje es lo suficientemente amplia, el árbitro tiene la autoridad de adjudicar prácticamente todo tipo de controversia legal. Entre éstas, el árbitro puede otorgar remedios provisionales, resolver problemas de custodia y relaciones de familia, y entender en disputas en torno a la disolución de sociedades. P. Bedell & L.K. Ebling, *Equitable Relief in Arbitration: A Survey of American Case Law*, 20 (Núm. 1) Loy. U. Chi. L.J. 39 (1988).

■ De hecho, una cláusula de arbitraje puede ser lo suficientemente amplia como para incluir entre los asuntos a ser llevados a dicho foro la existencia o no de un contrato. El caso normativo a estos efectos es *Becker Autoradio v. Becker Autoradiowerk GmbH*, 585 F.2d 39 (3er Cir. 1978). En este caso, una corporación norteamericana que actuaba como distribuidora exclusiva de una corporación alemana presentó demanda contra esta última por haber roto la promesa de renovar un acuerdo anterior de distribución. El tri-

bunal determinó que la cláusula de arbitraje era amplia,(10) que incluía la renovación oral del contrato escrito. El tribunal señaló lo siguiente:

> In sum: given the strong federal policy favoring arbitration; given the broad language of the arbitration clause in this case; given the fact that this dispute concerns the continuation or termination of the 1974 Agreement and the Agreement itself includes provisions relevant to renewal; given that the issues here derive from the relationship created from that Agreement; and recognizing that doubts are to be resolved in favor of arbitration unless we can state with "positive assurance" that arbitration of the dispute was not intended by the parties (an assurance which is not present in this case), we conclude that the dispute here presented is arbitrable under article 13 of the 1974 Agreement. *Becker Autoradio v. Becker Autoradiowerk GmbH*, supra, pág. 47.

## III

Con este trasfondo doctrinal, examinemos los hechos del caso de autos. World alega en su demanda, en síntesis, que Atlantic incumplió un acuerdo verbal mediante el cual ésta "distribuiría todo el producto fílmico que la codemandada tenía disponible para el año 1986, bajo los mismos términos y *condiciones que el año anterior*". (Énfasis nuestro.)(11) Ciertamente se trata de un contrato en el comercio

---

(10) Para un análisis de los efectos de una cláusula de arbitraje limitada, véase *Kansas Gas & Electric Co. v. Westinghouse Electric Corp.*, 861 F.2d 421 (4to Cir. 1988). *Cf. Waddell v. Shriber*, 348 A.2d 96, 101 (1975), donde el tribunal sostuvo lo siguiente:

"When parties create a contractual relationship which includes a broad arbitration agreement, they intend to include within the scope of arbitration any dispute arising from the termination of that contractual relationship unless they clearly evidence a purpose to exclude such disputes.

. . . . . . . . . .

"The phrase 'any controversy' is certainly broad enough to enforce tort as well as contractual disputes, the only limitation being that the dispute has its roots in the applicable relationship between the parties."

(11) Demanda presentada por World. Anejo 1, pág. 2.

interestatal, por lo que le es aplicable la Ley Federal de Arbitraje.

La propia demandante acepta que el alegado acuerdo verbal tenía los mismos términos del contrato escrito. Éste, a su vez, contenía una amplia cláusula de arbitraje: la Cláusula 31. Ante estos hechos y, enfrentándonos a una cláusula de arbitraje amplia, es forzoso concluir, a la luz de *Becker Autoradio v. Becker Autoradiowerk GmbH*, supra, y de la ley federal aplicable, es al árbitro a quien le compete la determinación de la existencia o no del contrato verbal.[12]

A tenor con lo antes expuesto, revocamos nuestros pronunciamientos en contrario efectuados en *Walborg Corp. v. Tribunal Superior*, supra, y resolvemos que la aplicación del Art. 3-B de la Ley sobre Contratos de Distribución de Puerto Rico, *supra*, conflije con la Ley Federal de Arbitraje. Procede, por lo tanto, el arbitraje de la controversia entre World y Atlantic en conformidad con los términos de la cláusula sobre arbitraje pactada.

Por todo lo cual, *se dictará sentencia expidiendo el auto solicitado, revocando la resolución del Tribunal Superior, Sala de San Juan, de 15 de mayo de 1987 y devolviendo el caso para ulteriores procedimientos que no sean inconsistentes con lo aquí resuelto.*

El Juez Asociado Señor Negrón García se inhibió.

---

[12] Como ha expresado un autor:
"Disputes over the existence of a contract or the extension of an expired contract have been found to fall within the ambit of the contract's arbitration clause." M. Hoellering, *Arbitrability of Disputes*, 41 Bus. Law. 125, 142 (1985).