# 97 DTA 95

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL DE SAN JUAN**

ANGELO COPPOLA ETC.
Apelantes

v.

SEGUROS DE SERVICIO DE SALUD DE PUERTO RICO, INC.
Apelados

Núm. KLAN-96-00572

San Juan, Puerto Rico, a 28 de abril de 1997

Panel integrado por su presidenta, la Juez Fiol Matta,
la Juez Rodríguez de Oronoz y el Juez Gierbolini

Gilberto Gierbolini, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El 13 de junio de 1996, Angelo Coppola Muñoz, (Coppola), Sharon Fasick Julia y la Sociedad de Gananciales compuesta por ambos (en adelante Coppola) presentaron recurso de Apelación en el que solicitan dejemos sin efecto la Sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan, el 8 de mayo de 1996, notificada el 14 de mayo de 1996. El tribunal en dicha Sentencia ordenó el archivo del caso y lo refirió a arbitraje. A su vez, hizo reserva de jurisdicción para decretar su reapertura con respecto a las causas de acción que no son parte del proceso de arbitraje.

El 12 de julio de 1996 Seguros de Servicio de Salud de Puerto Rico Inc., y otros (en adelante *"Triple-S"*) presentó Oposición a Recurso de Apelación en la cual solicitan que confirmemos la Sentencia emitida por el Tribunal de Primera Instancia.

Luego de analizar los hechos del caso, según expuestos por ambas partes, y el derecho aplicable, hemos decidido que procede modificar en parte la Sentencia recurrida y así modificada confirmar para que el caso continúe de acuerdo al mecanismo que provee el contrato entre las partes el cual culmina en un proceso de arbitraje. Revocamos en cuanto a la segunda causa de acción sobre difamación, ya que la misma no cae dentro de la cláusula de arbitraje contenida en el contrato. Por tanto, respecto a dicha controversia, devolvemos el caso a instancia para que continúen los procesos para la celebración de una vista en su fondo.

### I

Coppola es doctor en medicina con especialidad en el área de Práctica Familiar. A principios de febrero de 1988 Coppola contrató con el CPC Hospital San Juan Capestrano (en adelante *"el Hospital"*) para que le fueran concedidos privilegios para rendir servicios médicos en el Hospital como miembro de la facultad médica activa y como miembro de la facultad de consultoría médica.

El 12 de febrero de 1988, Coppola suscribió un contrato con Triple-S. De acuerdo a las cláusulas de ese contrato, entre otras cosas, Triple-S remuneraría a Coppola por cada asegurado a quien éste prestara servicios médicos. Este acuerdo contiene una cláusula de arbitraje, mediante la cual las partes estipularon un método de resolución de disputas entre los médicos participantes y Triple-S. El Artículo VII, Inciso 1 del contrato dispone en cuanto al método de resolución de controversias, a saber:

*"Toda disputa o controversia que surja entre Triple-S y el médico participante, según se define este término en el presente contrato, será sometida, considerada y resuelta por la Junta de Directores, siguiendo el Reglamento sobre Disputas y Controversias entre Participantes y Triple-S."*

El Artículo 1, Inciso XVI, define el término disputa o controversia como aquella situación en que una de las partes contratantes entiende que la otra parte ha incurrido en una violación de los términos y condiciones de este contrato, o los Estatutos o Reglamentos vigentes de Triple-S. Si luego de la decisión de la Junta de Directores la disputa subsiste, la misma es sometida a arbitraje según el procedimiento dispuesto en el Reglamento sobre Disputas y Controversias entre Participantes y Triple-S. Véase Artículo VII del contrato.

Como parte de una investigación de historiales de pago para determinar los patrones de facturación, Triple-S identificó el historial de Coppola como uno que se apartaba del promedio de facturación de consultas, visitas y EKG (electrocardiogramas) en pacientes del Hospital. Coppola fue referido al Departamento de Revisión y Utilización de Triple-S para que realizara las auditorías correspondientes. Triple-S comenzó la auditoría e informó a Coppola que en la mayoría de los casos el servicio brindado por él no era médicamente necesario. Coppola solicitó a Triple-S que le informara la evidencia que sustentaba estos hallazgos; además, negó lo expuesto por Triple-S.

El 8 de julio de 1993, Triple-S reclamó a Coppola $31,707.39 por concepto de alegada sobreutilización y sobre pago de consultas y otros procedimientos. Entre las partes surge entonces una controversia sobre si la facturación de Coppola se ajustaba a los parámetros contractuales de facturar por servicios médicamente necesarios conforme al contrato, Artículo I, Inciso X. El 15 de diciembre de 1993 Coppola presentó demanda ante el entonces Tribunal Superior de San Juan. Triple-S solicitó

la paralización de los procedimientos y solicitó que las controversias fueran referidas a arbitraje según el contrato existente. Luego de varias mociones de ambas partes a tales efectos, el tribunal de instancia emitió sentencia ordenando la paralización de los procedimientos. En dicho dictamen, el tribunal hizo reserva de jurisdicción para decretar la reapertura del caso con respecto a las causas de acción levantadas por Coppola en sus alegaciones y que no serían parte en el proceso de arbitraje; ésto, una vez hubiere un decreto final en tal proceso.

De esa decisión es que recurre ante nos Coppola. Este alega que Triple-S ha interferido con la relación contractual existente entre él y el Hospital y como consecuencia directa de dicha situación ha sufrido y continua sufriendo cuantiosos daños ecónomicos, así como daños y angustias mentales. También alega que Triple-S por sí, en conjunto, o a través de uno o más de los co-demandados ha difamado su nombre profesional con manifestaciones calumniosas y como consecuencia de dichas actuaciones ha sufrido daños ecónomicos y angustias mentales. La tercera causa de acción aducida por Coppola es para reclamar sus honorarios ante la negativa de Triple-S de dar estricto cumplimiento a las disposiciones contractuales que rigen su relación con Coppola.

Coppola también aduce que las tres causas de acción interpuestas en la demanda no están sujetas a la cláusula de arbitraje, y que aun si lo estuvieran, el arbitraje era improcedente porque la cláusula era nula, y Triple-S había renunciado por sus actos a invocar la misma.

## II
En el derecho de obligaciones es un principio fundamental la norma establecida en el Artículo 1044 del Código Civil a los efectos de que un contrato tiene fuerza de ley entre las partes contratantes.

El Título 32 L.P.R.A. Sección 3201 establece:

*"Dos o más partes podrán convenir por escrito en someter a arbitraje, de conformidad con las disposiciones de este Capítulo, cualquier controversia que pudiera ser objeto de una acción existente entre ellos a la fecha del convenio de someter a arbitraje; o podrán incluir en un convenio por escrito una disposición para el arreglo mediante arbitraje de cualquier controversia que en el futuro surgiere entre ellos de dicho acuerdo o en relación con el mismo. Tal convenio será válido, exigible e irrevocable salvo por los fundamentos que existieran en derecho para la revocación de cualquier convenio."*

El arbitraje contractual puede surgir de una cláusula accesoria a un contrato principal mediante la cual las partes acuerdan someter a arbitraje sus desavenencias futuras o puede surgir de un convenio por escrito para resolver una controversia existente, *Rivera v. Samaritano & Co., Inc.*, 108 D.P.R. 604 (1979).

En Puerto Rico existe una fuerte política que favorece el arbitraje de controversias, *Sears Roebuck and Co. v. Herbert H. Johnson Assoc., Inc.*, 325 F. Supp. 1338 (1979).

Una vez acordado el arbitraje, los tribunales carecen de discreción y tienen que dar cumplimiento al arbitraje acordado. Más aún, cualquier duda sobre el alcance de las controversias que pueden ser llevadas a arbitraje debe resolverse a favor del arbitraje, *World Films, Inc. v. Paramount Pict. Corp.*, 125 D.P.R. 352 (1990).

En *AT & T Technologies v. Communication Workers*, 475 U.S. 643 (1986), el Tribunal Supremo Federal estableció que:

*"Where the contract contains an arbitration clause, there is a presumption of arbitrality in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." AT & T Technologies v. Communications Workers, supra*, página 650.

El interés estatal en promover el arbitraje como método para solucionar disputas está reflejado en la presunción de arbitrabilidad cuando un contrato tiene una cláusula de arbitraje. En estos casos, las

dudas deben ser resueltas a favor de la cobertura (arbitrabilidad), *Universidad Católica de P.R. v. Triangle Engineering Corp.,* **94 J.T.S. 72,** Vol. XVII, página 11954.

Cuando los contratantes han convenido que un tipo particular de disputa sea arreglada en arbitraje, en lugar de litigación judicial, un tribunal no debe vulnerar ese acuerdo y decidir por sí mismo la disputa arbitrable, *Universidad Católica de P.R. v. Triangle Engineering Corp., supra.*

En ausencia de estipulaciones específicas en un contrato para resolver una situación, un tribunal debe inferir la intención de las partes a base de la redacción de las demás cláusulas. Por tanto, esto aplica a los contratos de arbitraje donde una vez acordado el arbitraje, cualquier duda sobre el alcance de las controversias que pueden ser llevadas a arbitraje deben ser resueltas a favor del mismo.

La arbitrabilidad de controversias; esto es, la determinación de si un acuerdo crea el deber de las partes de someter a arbitraje una controversia en particular es tarea judicial. Existe, sin embargo, una presunción de arbitrabilidad cuando el contrato tiene una cláusula de arbitraje. Una vez acordado el arbitraje, los tribunales carecen de discreción y tienen que dar cumplimiento al arbitraje acordado. El mecanismo de arbitraje será utilizado sólo si las partes así lo han pactado y en la forma en que lo hayan pactado, *World Films, Inc. v. Paramount Pict. Corp., supra.*

En casos donde expresamente han pactado un convenio de arbitraje, un tribunal no puede relevar a una parte de cumplir con lo que se obligó a hacer mediante contrato cuando el contrato es legal y válido y no contiene vicio alguno. Ni el Derecho ni los Tribunales de Justicia existen para facilitar o permitir a los contratantes evadir el cumplimiento de sus obligaciones, *Olazábal v. U.S. Fidelity, Etc.,* 103 D.P.R. 448 (1975); *Matricardi v. Peñagarícano, Admor.,* 94 D.P.R. 1 (1967).

Al existir un pacto referente a que someterían a arbitraje toda disputa o controversia que surgiera del contrato entre las partes, definidos tales términos en el contrato como aquella situación en que una de las partes entiende que la otra ha incurrido en violación de los términos y condiciones del contrato, o los Estatutos o Reglamentos vigentes de Triple-S, procede someter al procedimiento establecido aquellas controversias derivadas de la actuación las partes que éstas alegan que constituyen una violación a los términos del contrato.

Los contratantes establecieron en el contrato de arbitraje que todo asunto relacionado con disputas entre las partes o cualquier reclamación debía ser notificada por escrito al Secretario de la Junta de Directores y su intención de presentar una controversia. La Junta de Directores debía emitir una decisión de la cual si alguna de las partes no estaba de acuerdo podía entonces solicitar al arbitraje, Reglamento sobre Disputas y Controversias entre Participantes y Triple-S.

Lo anterior expone el proceso que debió ser seguido con relación a las controversias que caían dentro de aquellas que debían ser resueltas mediante el mecanismo de arbitraje. La primera y la tercera causa de acción en el caso ante nos deben ser resueltas conforme a este procedimiento. Ambas están relacionadas con una controversia que tiene su inicio en la alegación de una violación del contrato, Estatutos o Reglamentos de la Triple-S. La segunda causa de acción sobre difamación es una separada que nada tiene que ver con el contrato, Estatutos o Reglamentos de Triple-S.

### III

En el caso ante nos, Coppola alega que la cláusula de arbitraje es nula por estar la misma contenida en un contrato de adhesión en donde las partes no tenían el mismo poder de negociación y cuyo contenido no es razonable.

Esta alegación de que el mero carácter de adhesión del contrato con Triple-S equivale a la nulidad del mismo, no es sostenible en derecho.

*"Los contratos de adhesión son los que en lugar de un proceso de oferta y aceptación realizada caso por caso, se celebran a base de ofertas uniformes, según un modelo fijado de antemano, dirigidas a todas las personas que necesiten o pueda convenirles la cosa o el servicio ofrecido. Este contrato no queda redactado como resultado de una negociación sino que una de las partes, el cliente, no puede discutir las condiciones del contrato y ha de adherirse al contrato que ya ha*

*redactado la otra parte."* José Puig Brutau, *Compendio de Derecho Civil,* Vol. II.

Aun cuando un contrato de adhesión sea analizado del modo más favorable a la parte más débil, ello no significa que habrá de ser interpretado de modo irrazonable, *R.C. Leasing Corp. v. Williams Int. Ltd.,* 103 D.P.R. 163 (1974). La adhesión no implica una declaración de nulidad del contrato, *Casanova v. P.R. Amer. Ins. Co., supra.*

Coppola también alega que Triple-S renunció al uso del procedimiento de arbitraje y por tanto no puede ahora invocar el mismo. Alega que la inacción de Triple-S de poner en vigor la cláusula de arbitraje contenida en el contrato entre las partes constituye una renuncia al uso de la misma.

En *McGregor-Doniger v. Tribunal Superior,* 98 D.P.R. 864 (1970), revocado este pronunciamiento por otras razones, con efecto prospectivo por *Walborg Corp. v. Tribunal Superior,* 104 D.P.R. 184, quedó establecido que una vez pactado un contrato, toda controversia o reclamación que surja de su interpretación o que esté relacionada con el contrato sería resuelto a través de arbitraje. Los tribunales deben ser renuentes en concluir que una parte ha incurrido en una renuncia del derecho a arbitraje; toda duda al respecto debe ser resuelta a favor del arbitraje. No constituye una renuncia al derecho de arbitraje pactado en un contrato, por el hecho de que la parte demandada en un pleito reclamando derechos que alegadamente surgen del contrato haya contestado la demanda, levantado defensas especiales y tomando deposiciones al demandante, cuando en su primera alegación en el caso invocó dicho derecho de arbitraje y solicitó la suspensión de los procedimientos hasta tanto finalizara el proceso de arbitraje pactado en el contrato.

El Título 32 L.P.R.A. Sección 3203 dispone:

*"Si cualquiera de las partes de un convenio escrito de arbitraje incoare acción u otro recurso en derecho, el tribunal ante el cual dicha acción o recurso estuviere pendiente, una vez satisfecho de que cualquier controversia envuelta en dicha acción o recurso puede someterse a arbitraje al amparo de dicho convenio, dictará, a moción de cualquiera de las partes del convenio de arbitraje, la suspensión de la acción o recurso hasta tanto se haya procedido al arbitraje de conformidad con el convenio.*

*La solicitud de arbitraje puede ser hecha inicialmente por una de las partes. El demandado, después de conocer de la disputa, al ser notificado de la acción de la parte demandante; y aun la parte demandante cuando escoja inicialmente la vía judicial para exigir sus reclamaciones."* Sears Roebuck and Co. v. Herbert H. Johnson Assoc., Inc., 325 F. Supp. 1338 (1971).

El Título 32 L.P.R.A. Sección 3204 dispone:

*"(1) Cualquiera de las partes de un convenio por escrito de arbitraje que alegare la negligencia o negativa de otra a proceder a un arbitraje de conformidad con el convenio podrá solicitar del tribunal una orden obligando a las partes a proceder a arbitraje de conformidad con el convenio entre ellas... Si el tribunal quedare satisfecho, luego de oír a las partes, de que no existe controversia sustancial alguna en cuanto a la existencia o validez del convenio de arbitraje, o en cuanto al incumplimiento del mismo, el tribunal dictará orden requiriendo a las partes a proceder al arbitraje de conformidad con los términos del acuerdo.*

*(2) Si el tribunal encontrare que se ha suscitado una controversia en cuanto a la existencia o validez del convenio de arbitraje o en cuanto al incumplimiento del mismo, el tribunal procederá inmediatamente a la vista de tal controversia."*

Triple-S no renunció al derecho de arbitraje ni Coppola logró establecer la alegada renuncia. El peso de establecer tal renuncia recae sobre el proponente, *McGregor-Doniger v. Tribunal Superior, supra.* Las actuaciones de Triple-S que alegadamente constituyen una renuncia al derecho a arbitraje no pueden ser consideradas como tal. Como antes expresamos, Triple-S en el caso invocó el procedimiento establecido por las partes sobre arbitraje y solicitó la suspensión de los procedimientos.

Al analizar los hechos y circunstancias del caso ante nos, concluimos que procede que el caso sea

referido para que las partes continúen con el mecanismo provisto en el contrato entre ellos. Primero, ante la Junta de Directores, y luego el procedimiento de arbitraje. En este caso específico, la primera causa de acción sobre interferencia culposa con relaciones contractuales y la tercera causa de acción sobre reclamación de honorarios. La segunda causa de acción sobre difamación no es arbitrable, ya que no está contenida bajo la cláusula de arbitraje. Para ésta, procede la celebración de un juicio ante el tribunal de justicia.

**IV**

Por las razones expuestas anteriormente, **CONFIRMAMOS** la determinación de instancia respecto a la primera y tercera causa de acción, las cuales deben ser sometidas al procedimiento establecido en el contrato. **REVOCAMOS** respecto a la segunda causa de acción, la cual no es arbitrable y debe ser vista por un tribunal de justicia. En su consecuencia, **DEVOLVEMOS** el caso al Tribunal de Primera Instancia, Sala Superior de San Juan, para ulteriores procedimientos cónsonos con lo aquí resuelto.

Lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General