# 99 DTA 152

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL IV DE AGUADILLA Y MAYAGUEZ**

MARIA ADELAIDA OTHEGUY, JUAN LABRADOR,
LA FIRMA LABRADOR & OTHEGUY
Demandantes-Apelantes

v.

RAMIRO VIDAL RAMIREZ, SU ESPOSA ZULMA VIDAL Y LA SOCIEDAD
LEGAL DE GANANCIALES POR ELLOS CONSTITUIDA
Demandados-Apelados

Núm. KLAN-98-00950

San Juan, Puerto Rico, a 11 de mayo de 1999

Panel integrado por su Presidente, el Juez Rossy García
y los Jueces Martínez Torres y Rodríguez García

Rodríguez García, Juez Ponente

## I

En septiembre de 1993, el demandado y apelante, Ramiro Vidal Ramírez, en adelante *"Vidal"*, intervino en un contrato de servicios profesionales con la parte demandante y apelada, la firma de arquitectos Labrador & Otheguy, en adelante *"Labrador y Otheguy"*, para que realizara toda la labor de diseño, planos y trámites administrativos ante las agencias gubernamentales, encaminadas a lograr la construcción y el desarrollo de un local donde se ubicaría el negocio de comidas Grandy's, en el Municipio de Cabo Rojo. En el referido contrato, la firma aparece representada por María A. Otheguy, pero no aparece Labrador. El texto del contrato firmado por las partes consistió en un formulario de un contrato de servicios profesionales redactado por el Instituto Americano de Arquitectos en el 1987, titulado *"Standard Form of Agreement Between Owner and Arquitect"* (AIA Document B141). Dicho formulario de contrato de servicios profesionales contiene la siguiente cláusula de arbitraje:

*"ARTICLE 7 - ARBITRATION*

*7.1 Claims, disputes or other matters in question between the parties to this Agreement arising out of or relating to this Agreement or breach thereof, shall be subject to and decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect unless the parties mutually agree otherwise."* █

Labrador & Otheguy realizaron gran parte de la labor pactada, pero el local no se llegó a construir. En varias ocasiones Labrador y Otheguy solicitaron por escrito a Vidal el pago de sus servicios, pero Vidal ignoró tales notificaciones de cobro. Luego, en 28 de mayo de 1996, María Adelaida Otheguy, Juan Labrador y la firma *"Labrador & Otheguy"*, presentaron una acción civil en cobro de dinero contra Vidal, su esposa Zulma Vidal, y la Sociedad de Gananciales por ellos constituida, ante el Tribunal de Primera Instancia, Subsección de Distrito, Sala de Cabo Rojo, solicitando el pago de la suma de TREINTA Y TRES MIL SETECIENTOS CINCUENTA Y DOS DOLARES ($33,752.00) adeudados por concepto de sus servicios pactados y ofrecidos. En su contestación a la demanda, Vélez alegó que él no tenía que pagar suma adicional de dinero a Labrador & Otheguy debido a que la firma no prestó los servicios según lo pactado, e infló e! valor del proyecto para poder cobrar mayores honorarios. Además, Vélez alegó que la acción judicial presentada en su contra no procedía por contener el contrato de servicios profesionales que ambas partes firmaran, la citada cláusula de arbitraje.

En 17 de marzo de 1997 Labrador y Otheguy presentaron una moción de sentencia sumaria, la cual fue declarada con lugar por el Tribunal de Primera Instancia, Sala de Cabo Rojo (Hon. Carlos Ortiz Alvarez, J). Oportunamente, Vélez solicitó la reconsideración al Tribunal. En el 24 de junio de 1998, el Tribunal de Primera Instancia declaró NO HA LUGAR la moción de reconsideración.

No conforme con lo resuelto por el Tribunal de Primera Instancia, oportunamente acudió Vélez ante nos con el recurso de apelación que hoy atendemos. En dicho recurso, Vélez alega que el Tribunal de Primera Instancia cometió los siguientes errores:

*"Cometió error el Hon. Tribunal de [Primera] Instancia al declarar con lugar la moción de sentencia sumaria cuando de la propia solicitud surgía una controversia de hechos, lo cual impedía según la Regla 36.3 de Procedimieino Civil, que la misma se declarara con lugar.*

*Cometió error el Hon. Tribunal de [Primera] Instancia al adjudicar la moción de sentencia sumaria sin considerar para nada que del contrato de servicios profesionales presentado para la solicitud de sentencia sumaria, surgía claramente la defensa afirmativa que había embozado la parte demandada-apelante, en su contestación a la demanda, en el sentido de que la controversia tenía que ser sometida a arbitraje."*

Habiendo recibido el escrito de oposición de Labrador y Otheguy, nos encontramos en condiciones de resolver, y lo hacemos revocando la sentencia dictada por el Tribunal de Primera Instancia, Subsección de Distrito, Sala de Cabo Rojo, en 29 de enero de 1998.

## II

El artículo 1207 del Código Civil (31 L.P.R.A. ß3372) dispone que los contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarios a las leyes, la moral, ni al orden público.

El artículo 1208 del Código Civil (31 L.P.R.A. sec. 3373) establece que la validez y el cumplimiento de los contratos no pueden dejarse al arbitrio de uno de los contratantes.

El artículo 1044 del Código Civil (31 L.P.R.A. sec. 2994) expresa que las obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes y deben cumplirse al tenor de los mismos.

Pero más específicamente aún, desde el 8 de mayo de 1951, se aprobó en Puerto Rico la Ley de Arbitraje, Ley Núm. 376 de ese año, 32 L.P.R.A. secs. 3201-3229, para reglamentar el arbitraje en Puerto Rico.

Se establece en el art. 1 de dicha ley, sección 3201:

*"Dos o más partes podrán convenir por escrito en someter a arbitraje, de conformidad con las disposiciones [de esta ley], cualquier controversia que pudiera ser objeto de una acción existente entre ellos a la fecha del convenio de someter a arbitraje; o podrán incluir en un convenio por escrito una disposición para el arreglo mediante arbitraje de cualquier controversia que en el futuro surgiere entre ellos de dicho acuerdo o en relación con el mismo. Tal convenio será válido, exigible e irrevocable salvo por los fundamentos que existieran en derecho para la revocación de cualquier convenio."*

Eso hicieron las partes en el presente caso cuando se ligaron contractualmente.

Nuestro Tribunal Supremo, en el caso de *Universidad Católica de Puerto Rico v. Triangle Engineering Corp.,* 136 D.P.R. ___, **94 J.T.S. 72,** pág. 11954, reafirma la vigencia de la política pública sobre el arbitraje. Luego de citar la vigencia del artículo 1 de la Ley de Arbitraje, citado *supra*, indica:

*"En McGregor-Donicer v. Tribunal Superior, 98 D.P.R. 864, 869 (1970), expresamos que existe una fuerte política a favor del arbitraje y toda duda respecto a la existencia o no de dicho procedimiento debe resolverse a su favor. Así lo reafirmamos recientemente en World Films, Inc. v. Paramount Pictures Corp.[125 D.P.R. 352],* **90 J.T.S. 17,** *res. en 31 de enero de 1990."*

Ante un convenio de arbitraje, lo prudencial es la abstención judicial, aunque esa intervención no está vedada.

Continúa nuestro Tribunal Supremo comentando más adelante en la misma página de la opinión lo siguiente:

*"El interés estatal en promover el arbitraje como método para solucionar disputas se ve reflejado, además, en la presunción de arbitrariedad cuando el contrato tiene una cláusula de arbitraje. En esas circunstancias, las "dudas deben resolverse a favor de dicha cobertura." AT & T Technologies Inc. v. Communications Workers of America, 472 U.S. 643, 650 (1985). "*

Además de esa presunción, hay un interés de promover las cláusulas de arbitraje contractuales. *AT & T, supra,* págs. 648-649. *"Es un corolario necesario del principio de que el arbitraje es una materia de contrato que cuando*

*las partes han provisto que un tipo particular de disputa debería se arreglada en arbitraje, en lugar de litigación, un tribunal no vulnerará dicho acuerdo decidiendo por sí mismo dicha disputa". National Railroad Passenger Corporation v. Boston and Maine Corporation,* 850 F.2d 756, 759 (D.C. Cir. 1988), citado en *World Films, supra.*

Señalamos finalmente que en 25 de junio de 1999, el Tribunal Supremo de Puerto Rico aprobó el *Reglamento de Métodos Alternos Para la Solución de Conflictos,* el cual en la Regla 1.01, contiene la siguiente declaración de política pública:

*"El Tribunal Supremo de Puerto Rico declara que es política pública de la Rama Judicial fomentar la utilización de los mecanismos complementarios al sistema adjudicativo tradicional con el fin de impartir justicia en una forma eficiente, rápida y económica."*

El Capítulo 8 de dicho Reglamento, incorpora el arbitraje como uno de los métodos alternos para solucionar disputas, y en la Regla 8.01(b) se establece:

*"El procedimiento dispuesto en estas Reglas en nada afecta la validez y el ámbito de aplicación de la Ley de Arbitraje de Puerto Rico."*

Bajo el Artículo 3 de la referida Ley de Arbitraje, 32 L.P.R.A., sec. 3203, la paralización de los procedimientos ante el Tribunal de Primera Instancia, es automática:

*"Si cualquiera de las partes de un convenio escrito de arbitraje incoare acción u otro recurso en derecho, el tribunal ante el cual dicha acción o recurso estuviere pendiente, una vez satisfecho de que cualquier controversia envuelta en dicha acción o recurso puede someterse a arbitraje al amparo de dicho convenio, dictará, a moción de cualquiera de las partes del convenio de arbitraje, la suspensión de la acción o recurso hasta tanto se haya procedido al arbitraje de conformidad con el convenio."*

La parte que ante nos recurre levantó como defensa afirmativa su derecho a someter el asunto a arbitraje, y se opuso a la moción de sentencia sumaria de los arquitectos Labrador & Otheguy, insistiendo en dicha defensa, pero el Tribunal hizo caso omiso del reclamo de parte, y de la Ley de Arbitraje.

### III

En el presente caso existen unas controversias relacionadas con un alegado incumplimiento de servicios profesionales pactados por parte de Labrador & Otheguy, entre otros asuntos, y una supuesta cantidad de dinero adeudado por Vélez por unos servicios profesionales, alegadamente ya ofrecidos. Ambas controversias principales, y los otros asuntos alegados, están relacionados con el cumplimiento de obligaciones que surgen de un contrato de servicios profesionales que ambas partes perfeccionaron en septiembre de 1993. Dicho contrato de servicios profesionales contiene una cláusula de arbitraje válida, citada, *supra,* a la página 1.

Bajo dicha cláusula, Labrador & Otheguy están impedidos de presentar acciones legales en los tribunales por controversias cubiertas por la cláusula de arbitraje del contrato de servicios profesionales que ellos previamente, y libremente, firmaron. Cabe señalar que dicho contrato es uno de adhesión, producido por los arquitectos y presentado a la apelante para su aceptación.

Erró el Tribunal de Primera Instancia al negarse a desestimar la demanda incoada sin perjuicio, y remitir a los litigantes al procedimiento de arbitraje, el cual los arquitectos Labrador & Otheguy establecieron en el contrato de adhesión que le sometieron a Vélez para su firma.

Por los fundamentos antes expuestos, se revoca la sentencia apelada y se dicta sentencia devolviendo el presente caso al Tribunal de Primera Instancia, Sala de Distrito de Cabo Rojo, para que proceda conforme a lo aquí resuelto, y lo dispuesto en el Art. 3, de la Ley de Arbitraje de Puerto Rico, 32 L.P.R.A. sec. 3203.

Notifíquese por la vía ordinaria.

Lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

**ESCOLIO 99 DTA 152**

1. AIA Document B141, p. 6, escrito de apelación, Apéndice III, pág. 15.