Miranda De Hostos, Juez Ponente
*923 TEXTO COMPLETO DE LA SENTENCIA
La peticionaria Komatsu Forklift USA, Inc. (en adelante Komatsu), acude de una resolución emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón, que declaró sin lugar su moción de desestimación y determinó que la cláusula de arbitraje en un contrato de distribución acordado con la recurrida Diversified Equipment Corp. (en adelante Diversified), no había sido suscrita de manera “libre y voluntaria” como dispone la ley y asumir jurisdicción sobre la demanda.
Alega, en síntesis, la peticionaria, que incidió el tribunal de instancia al determinar que la cláusula de arbitraje en cuestión no era válida por no haber sido suscrita de manera libre y voluntaria, y al no desestimar la demanda presentada por la recurrida Diversified y referir el caso a arbitraje, según lo pactado.
Con el beneficio de la posición de ambas partes, se expide el auto de certiorari, se revoca la resolución emitida por el Tribunal de Primera Instancia y se desestima sin perjuicio la demanda instada por Diversified por falta de jurisdicción. Se refiere la controversia al procedimiento de arbitraje, según lo pactado por las partes litigantes.
Veamos los fundamentos de nuestro dictamen.
I
La peticionaria Komatsu es una corporación foránea organizada bajo las leyes del estado de Georgia, USA, y la recurrida Diversified, es una corporación organizada bajo las leyes de Puerto Rico. Ambas entidades suscribieron entre sí, un contrato de distribución no exclusivo de venta y servicio de equipo de construcción e industrial, en o alrededor del 15 de marzo de 2000. (Véase, “Non-Exclusive Distributorship Agreement”, Ap. 1, págs. 6-26.)
Mediante carta de 30 de julio de 2004, la peticionaria Komatsu terminó la relación comercial que existía con la recurrida Diversified, pues ésta alegadamente no cumplió con lo pactado y le adeudaba 75,425 dólares. (Ap. 1, pág. 27.) Según los términos de la cláusula de arbitraje contenida en el artículo 32 del contrato antes referido, Diversified se había obligado a someter a un procedimiento de arbitraje bajo el American Arbitration Association cualquier protesta, controversia o reclamación que surgiera o estuviese relacionada con el contrato, o su incumplimiento. Sin embargo, el 5 de octubre de 2004, la recurrida Diversified presentó una demanda en solicitud de sentencia declaratoria, injunction preliminar, solicitud de entredicho provisional y daños y perjuicios ante el tribunal de instancia, alegando que la peticionaria Komatsu había incumplido el contrato de distribución existente entre las partes, sin justa causa, en violación de la Ley Núm. 75 de 24 de junio de 1964, conocida como Ley de Contratos de Distribución. 10 L.P.R.A. see. 278 et seq. (Aps. 1, 3,4, págs. 1-33.)
El tribunal de instancia celebró una vista el 14 de octubre de 2004, para determinar si se debía expedir el injunction preliminar solicitado por la recurrida Diversified. Durante dicha vista, el tribunal de instancia indicó que el contrato de distribución entre Komatsu y Diversified contenía una cláusula de arbitraje, por lo cual procedió a citar una audiencia para determinar según lo dispone la Ley de Contratos de Distribución en su Artículo 3C, 10 L.P.R.A. sec. 278b-3, si la cláusula de arbitraje había sido suscrita de manera libre y voluntaria.
*924 El 27 de octubre de 2004, la peticionaria Komatsu presentó moción urgente solicitando desestimación de la demanda y solicitud para que se dejara sin efecto la'vista del 1 de noviembre de 2004. (Ap. 7, págs. 39-115.) Alegó, en síntesis, que el contrato de distribución contenía una cláusula de arbitraje y que el pleito se debería referir al procedimiento de arbitraje pactado por éste y la recurrida Diversified. Solicitó, además, que se dejara sin efecto la vista pautada para el 1 de noviembre de 2004 conforme al Artículo 3C de la Ley de Contratos de Distribución, supra, pues dicha disposición legal era contraria a la Ley Federal de Arbitraje y la jurisprudencia aplicable.
Tras someter a las partes a una vista evidenciaría donde éstas presentaron prueba testifical y documental, el tribunal de instancia determinó que la cláusula de arbitraje que habían pactado las partes litigantes en el contrato de distribución, no fue suscrita de manera libre y voluntaria, asumió jurisdicción y no refirió el caso a arbitraje, al concluir que:

“El Tribunal determina que el Sr. Efraín Rosario [Diversified] firmó el contrato. El consentimiento que dio al firmar el contrato, la cláusula no es válida, su consentimiento estaba viciado, no lo hizo libre y voluntariamente. ”

(Resolución-Minuta, Ap. 9, pág. 119.)
Conforme su dictamen, el tribunal de instancia procedió a señalar vista de injunction preliminar para el 22 de diciembre de 2004. La peticionaria Komatsu acude ante nos a través del presente recurso de certiorari y una vez ordenada la paralización del trámite ante el foro de instancia y con el beneficio del escrito en oposición, resolvemos.
II
Expuestos los hechos pertinentes a la controversia ante nuestra consideración, procedemos a discutir la norma jurídica aplicable. Valga señalar que contrario a lo que alega la recurrida Diversified, en su escrito, la controversia ante nuestra consideración es sobre la validez de la cláusula de arbitraje y si fue suscrita de manera libre y voluntaria por las partes desde el aspecto contractual, y no sobre su validez constitucional.
A
El arbitraje contractual en Puerto Rico
En nuestra jurisdicción, existe una fuerte política pública a favor del arbitraje como método para la solución de conflictos en las controversias surgidas a virtud de relaciones contractuales. La razón para ello es que la resolución de disputas contractuales por vías alternas al trámite judicial resulta, entre otras cosas, en menos costos para los litigantes, así'como una solución más rápida a las controversias litigiosas. Medina Betancourt v. La Cruz Azul de P.R., opinión de 30 de noviembre de 2001, 2001 J.T.S. 168, pág. 497. (Casos citados.)
La legislación rectora sobre el arbitraje en Puerto Rico, expone en lo pertinente que:
“Dos o más partes podrán convenir por escrito en someter a arbitraje, de conformidad con las disposiciones de este capítulo, cualquier controversia que pudiera ser objeto de una acción existente entre ellos a la fecha del convenio de someter a arbitraje; o podrán incluir en un convenio por escrito una disposición para el arreglo mediante arbitraje de cualquier controversia que en el futuro surgiere entre ellos de dicho acuerdo o en relación con el mismo. Tal convenio será válido, exigible e irrevocable, salvo por los fundamentos que existieran en derecho para la revocación de cualquier convenio. ” (Enfasis suplido.).
Art. 1, Ley Núm. 376 de 8 de mayo de 1951, 32 L.P.R.A. see. 3201.
*925 Las partes que voluntariamente se sometan a un procedimiento de arbitraje están obligadas por el mismo, salvo aquellas situaciones en que la jurisprudencia haya establecido que medie justa causa para obviarlo. Quiñones González v. Asociación de Condómines Plaza Azul II, opinión de 15 de abril de 2004, 2004 J.T.S. 67, pág. 936; Crufon Const. v. Autoridad de Edificios Públicos, opinión de 11 de febrero de 2002, 2002 J.T.S. 24, pág. 726. Cualquier duda sobre el alcance de las controversias que puedan ser llevadas a arbitraje, debe resolverse a favor del arbitraje que hayan acordado las partes. Cf. World Films, Inc. v. Paramount Pict. Corp., 125 D.P.R. 352, 358 (1990); Paine Webber, Inc. v. Services Concepts, Inc., opinión de 13 de junio de 2000, 2000 J.T.S. 100, pág. 1283.
En cuanto a la aplicación de las cláusulas de arbitraje en controversias relacionadas con la Ley de Contratos de Distribución, el Tribunal Supremo de Puerto Rico ha resuelto que una cláusula de arbitraje en este tipo de contrato obliga a las partes a arbitrar las controversias de acuerdo a lo establecido mediante el contrato de distribución que se hubiese acordado. World Films, Inc. v. Paramount Pict. Corp., supra.
El Artículo 3C de la Ley Núm. 75, supra, según enmendado por la Ley Núm. 448 de 28 de diciembre de 2000, dispone que:

“Antes de que pueda invocarse o ponerse en vigor cualquier convenio o cláusula que obligue a las partes a resolver mediante arbitraje cualquier controversia surgida bajo un contrato de distribución otorgado al amparo del presente capítulo, será requisito indispensable antes de que dicha controversia pueda ser sometida a arbitraje, a solicitud de cualquiera de las partes, que un tribunal con jurisdicción en Puerto Rico determine que dicha cláusula o convenio de arbitraje fue suscrito de forma libre y voluntaria por ambas partes. (Enfasis suplido.)

f.]”.

10 L.P.R.A. sec. 278b-3.
Esta enmienda persigue que antes de poner en vigor cualquier convenio o cláusula que obligue a las partes a resolver mediante arbitraje cualquier controversia surgida bajo un contrato de distribución, sea requisito indispensable antes de que dicha controversia pueda ser sometida a arbitraje, a solicitud de cualquiera de dichas partes, que un tribunal con jurisdicción en Puerto Rico determine que dicha cláusula o convenio de arbitraje fue suscrito en forma libre y voluntaria por ambas partes.
Cónsono con tal legislación es necesario el exponer que la Ley Federal de Arbitraje dispone que las cláusulas de arbitraje contenidas en los contratos en el comercio interestatal son válidas, irrevocables y mandatorias. Esta legislación federal según lo reconoce nuestro más alto foro, aplica tanto en los tribunales federales como en los estatales. World Films, Inc. v. Paramount Pict. Corp., supra, pág. 358.
No obstante tal principio de legislación federal, el Artículo 3-B de la Ley Núm. 75, supra, dispone sobre la nulidad de toda estipulación acordada en un contrato de distribución que obligue a las partes otorgantes a dirimir, arbitrar o litigar fuera de Puerto Rico o bajo las leyes de derecho foráneas, cualquier controversia que surja en tomo a su contrato de distribución. 10 L.P.R.A. sec. 278b-2.
Ante la posible contradicción o choque entre la ley estatal y la ley federal sobre arbitraje en la Ley de Contratos de Distribución, ya nuestro más alto foro había resuelto que dicho estatuto debe ser analizado bajo los principios de derecho constitucional del Tribunal Supremo Federal y la Ley Federal de Arbitraje, y en particular dispuso que:

“[...]la aplicación del Art. 3-B de la Ley sobre Contratos de Distribución de Puerto Rico, supra, conflije 
*926
con la Ley Federal de Arbitraje. Procede, por lo tanto, el arbitraje de la controversia [...] en conformidad con los términos de la cláusula sobre arbitraje pactada. ”

World Films, Inc. v. Paramount Pict. Corp., supra, pág. 364.
El dictamen de nuestro foro constitucional, como luego vamos a comentar, reconoce la supremacía de la Ley Federal de Arbitraje, que requiere a los foros estatales y federales el cumplimiento de los acuerdos que negocien entes privados sobre el arbitraje de las controversias contractuales.
B
La legislación federal sobre arbitraje
La Ley Federal de Arbitraje dispone como política pública federal que se favorecen las cláusulas de arbitraje en los contratos y son válidas, irrevocables y mandatorias como mecanismo para resolver las disputas que surjan entre las partes que así las otorgan. 9 U.S.C. sec. 1 et seq.; Moses H. Cone Hospital v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983).
El tribunal máximo federal ha reconocido que la ley federal de arbitraje le requiere a los foros estatales y federales el cumplimiento de los acuerdos negociados sobre arbitraje por las partes contratantes, según sus términos y condiciones. Prima Paint v. Flood & Conklin, 388 U.S. 395 (1967); Southland Corp. v. Keating, 465 U.S. 1, 16 (1984). La figura del arbitraje contractual es tan amplio que el foro federal ha reconocido inclusive que, en controversias sobre la ley anti-monopolio y la legislación federal aplicable al respecto, las partes pueden pactar que sean dilucidadas mediante el procedimiento de arbitraje. Véase, Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, 473 U.S. 614 (1985).
Bajo tales principios, cuando las partes contratantes acuerdan que las disputas que surjan del contrato otorgado se dilucidarán ante un árbitro, los tribunales no cuentan con jurisdicción sobre los mismos. Cualquier duda que surja respecto a si la controversia es arbitrable, se debe resolver por los foros judiciales a favor del arbitraje, según lo pactado. Perry v. Thomas, 482 U.S. 483, 493 (1987). Véase, además, Steelworkers v. Warrior & Gulf Co., 363 U.S. 574 (1960).
Los tribunales, tanto estatales como federales bajo la Ley Federal de Arbitraje, retienen jurisdicción para dilucidar si el contrato negociado entre las partes, sus términos y condiciones es de acuerdo a la ley y al orden público, y fue suscrito de forma “voluntaria y libre”, como cualquier otro contrato. Sobre tales aspectos jurídicos, los tribunales pueden dilucidar, la validez en derecho de los contratos que contienen cláusulas de arbitraje, pero una vez adjudicada su validez bajo los principios de ley, deben referir la controversia al foro de arbitraje según lo pactado. Cf. Prima Paint v. Flood & Conklin, supra.
C
Principios generales de los contratos
Comentada la norma jurídica sobre los contratos con cláusulas de arbitraje, procedemos a exponer los criterios jurídicos sobre la validez de los contratos conforme el derecho sustantivo vigente.
Los contratos son negocios jurídicos que existen desde que concurren los requisitos de: 1) consentimiento de los contratantes; 2) objeto cierto que sea materia del contrato; y 3) causa de la obligación que se acuerde. Art. 1213, Código Civil, 31 L.P.R.A. see. 3391. Véase, Colón v. Promo Motor Imports, Inc., 144 D.P.R. 659, 666 (1997).
El ordenamiento civil reconoce que si el consentimiento que se da por una de las partes al otorgar un *927 contrato fue prestado por error, violencia, intimidación o dolo, éste será nulo, y por ende, el contrato. Art. 1217, Código Civil, 31 L.P.R.A. see. 3404; Bosques Soto v. Echevarría Vargas, opinión de 13 de septiembre de 2004, 2004 J.T.S. 158, pág. 232.
Cada una de estas modalidades que vician el consentimiento, se definen en el Código Civil de manera específica. A continuación, procedemos a comentar tales vicios del consentimiento en los contratos.
Para que medie error que invalide el consentimiento, deberá recaer sobre la sustancia de la cosa objeto del contrato o en aquellas condiciones que dieron motivo a celebrarlo. Para que el error en la persona invalide el contrato, la consideración de ella deberá ser la causa principal de lo acordado. Art. 1218, Código Civil, 31 L.P. R.A. see. 3405; Coop. La Sagrada Familia v. Castillo, 107 D.P.R. 405, 413-415 (1978).
En cuanto a la violencia como elemento que vicia el consentimiento en los contratos, ésta se conforma “cuando para arrancar el consentimiento se emplea fuerza irresistible”. Art. 1219, Código Civil, 31 L.P.R.A. see. 3406. De otra parte, se ha definido la intimidación como aquella conducta que provoca en uno de los contratantes el temor racional y fundado a sufrir un mal inminente en su persona, bienes o familiares, y que tal acto sea determinante para dar el consentimiento y revista un matiz antijurídico. Nassar Rizek v. Hernández, 123 D.P.R. 360, 376 (1989).
Por último, el dolo como vicio en el consentimiento constituye aquellas “palabras o maquinaciones insidiosas” de uno de los contratantes, para inducir al otro a celebrar el contrato. Art. 1221, Código Civil, 31 L. P.R.A. see. 3408. Aunque la jurisprudencia ha reconocido que no todo tipo de dolo, en particular el incidental, produce la nulidad del contrato, es el dolo grave el cual se define como la conducta que indujo a la otra parte a celebrar el contrato, el que constituye un vicio en el consentimiento que da lugar a su nulidad. Bosques Soto v. Echevarría Vargas, supra; Márquez v. Torres Campos, 111 D.P.R. 854, 863 (1982).
III
Aplicación de la norma jurídica
Es un hecho incontrovertible que en el caso ante nos, las partes litigantes suscribieron un contrato no exclusivo de distribución. El mencionado contrato contiene en su Artículo 32, una cláusula de arbitraje mediante la cual ambas partes se obligaron a someter cualquier reclamación relacionada con el contrato, a un procedimiento de arbitraje bajo el American Arbitration Association. (Véase, Ap. 1, pág. 18.)
De acuerdo a la norma jurídica vigente, el Tribunal de Primera Instancia citó una audiencia para determinar si la cláusula de arbitraje había sido suscrita de manera libre y voluntaria, según lo dispone el Artículo 3C de la Ley Núm. 75, supra. Conforme surge de la resolución emitida por el tribunal de instancia, dicho foro judicial concluyó, luego de tener ante sí prueba testifical y documental, que el consentimiento prestado por el recurrido Diversified, estuvo viciado porque éste no suscribió el contrato libre y voluntariamente. Fundamentó su decisión en el hecho que “si [la recurrida Diversified] no firmaba el contrato, no le daban la línea [de distribución] de equipo”, por lo cual no suscribió el contrato con cláusula de arbitraje de manera libre y voluntaria.
Conforme a tales hechos no controvertidos, debemos determinar la corrección jurídica del dictamen emitido por el foro de instancia, examinando detenidamente cada una de las modalidades que vician el consentimiento al otorgar un contrato. Veamos.
Del análisis mesurado de los autos, no podemos concluir que medió error de tipo alguno que viciara el consentimiento prestado por la recurrida Diversified al otorgar el contrato de distribución. Las partes litigantes acordaron un contrato de distribución no exclusivo de venta y servicio de equipo de construcción e industrial. *928 Sin pasar juicio sobre sus alcances, las partes definieron y convinieron lo que constituía equipo, lista de precios, productos, detalles relacionados con el manejo de ventas y servicios, y las piezas de reemplazo. Además, se acordaron entre otros aspectos la cantidad de equipo que Diversified tenía que comprarle a Komatsu y las piezas para darle servicios a los equipos de inventario. {Véase, “Non-Exclusive Distributorship Agreement, Ap. 1, págs. 6-19.)
De la lectura del contrato surge que las partes habían acordado los pormenores del contrato de distribución y las condiciones que dieron lugar a celebrarlo. Las prestaciones están claramente definidas y Diversified no pudo probar que hubiese sido inducido a error sobre la sustancia del contrato que era la distribución no exclusiva del equipo de Komatsu. No hay alegación o prueba alguna que Komatsu indujo a error a Diversified a aceptar el contrato de distribución y la cláusula de arbitraje. Tanto es así, que Diversified acepta que estaba interesada en el contrato y que lo aceptó según sus condiciones, aun con la cláusula de arbitraje acordada, que ahora quiere impugnar.
Tampoco surge de los autos que para lograr el consentimiento de la recurrida Diversified, la peticionaria hubiese utilizado violencia o intimidación en su contra. El hecho que la recurrida no recibiera la línea de equipo si no firmaba el contrato de distribución, no es razón suficiente para viciar el consentimiento prestado libre y voluntariamente por ésta. Por tanto, el hecho de condicionar la entrega del objeto del contrato a la inclusión de una cláusula de arbitraje, aun siendo un contrato de adhesión, no es contrario a la ley, a la moral ni al orden público. Nada nos mueve a determinar que dicha condición tuvo como objetivo provocar en la recurrida un temor racional y fundado a sufrir un mal inminente en su persona, bienes o familiares.
Como último análisis, podemos concluir que de ninguna manera hubo dolo de parte de la peticionaria Komatsu que viciara el consentimiento prestado por la recurrida Diversified. No se desprende que Komatsu hubiese llevado a cabo maquinaciones insidiosas para inducir a Diversified a celebrar el contrato de distribución. Todo lo contrario, desde un principio, Komatsu le expresó a Diversified claramente que no le entregaría la línea del equipo si no firmaba como condición en el contrato de distribución la cláusula de arbitraje para dilucidar cualquier controversia que surgiera entre las partes sobre la validez y alcances del mismo. La cláusula contenida en el Artículo 32 del contrato era clara sobre el procedimiento de arbitraje al cual se estarían sometiendo de surgir alguna controversia en cuanto al alcance del contrato.
Por lo cual, concluido que el contrato suscrito entre las partes es válido en derecho y no se obtuvo el consentimiento de Diversified mediante violencia o intimidación, procede conforme la norma jurídica vigente de nuestro más alto foro en World Films, Inc. v. Paramount Pict. Corp., supra, que el foro de instancia desestimara el caso ante su consideración para referir la controversia a arbitraje, según lo pactado.
IV
Por los anteriores fundamentos, se expide el auto de certiorari, se revoca la resolución emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón, y se desestima sin perjuicio la demanda ante su consideración por falta de jurisdicción. Se refiere la controversia al procedimiento de arbitraje, según lo pactado por las partes litigantes.
Notifíquese inmediatamente por facsímil y por la vía ordinaria.
Lo acordó el Tribunal y lo certifica la Secretaria Interina.
Mildred Ivonne Rodríguez Rivera
Secretaria Interina del Tribunal de Apelaciones