ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| AZ GROUP LLC<br><br>Apelante<br><br>v.<br><br>YATES-BIRD LLC; COMPAÑIA ASEGURADORA A.<br><br>Apelada | KLAN202500109 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Número: SJ2023CV04910<br><br>Sobre: Incumplimiento de Contrato; Daños y Perjuicios |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, el Juez Ronda Del Toro y el Juez Pérez Ocasio

**Ronda Del Toro, Juez Ponente**

# SENTENCIA

En San Juan, Puerto Rico, a 24 de marzo de 2025.

AZ Group LLC, nos solicita que revoquemos la *Sentencia* que emitió el Tribunal de Primera Instancia, Sala de San Juan, el 10 de octubre de 2024.  Por medio de esta, el Tribunal desestimó la demanda incoada por AZ Group LLC contra Yates-Bird, LLC y otros, por existir entre las referidas partes un acuerdo de arbitraje.

Por los fundamentos que exponemos, se *Confirma* la Sentencia apelada.

## I.

El 23 de mayo de 2023, AZ Group, LLC (AZ Group), presentó una demanda sobre incumplimiento de contrato y daños y perjuicios contra Yates-Bird, LLC y otros (Yates-Bird).  La demanda fue enmendada el 25 de mayo de 2023.  AZ Group alegó, en síntesis, que Yates-Bird le subcontrató el 11 de agosto de 2022, para realizar terminaciones de obras de residencias.

Número Identificador

SEN2025 _____

Ello, en virtud de un contrato de obras firmado entre Yates-Bird y el Departamento de la Vivienda, bajo el programa denominado "Home Repair, Reconstruction or Relocation Program", mejor conocido como "Programa R3".   Señaló el demandante que el contrato entre Yates-Bird y AZ Group fue redactado en el idioma inglés.  Sostuvo que, en comunicación del 14 de febrero de 2023, le requirió a Yates-Bird el pago de ciento cuarenta y ocho mil novecientos ochenta y dos dólares con once centavos ($148,982.11) por concepto de trabajos efectuados, materiales y otros costos.  Mencionó que en esa misma comunicación denunció que Yates-Bird le retuvo los pagos hasta forzar su insolvencia, para entonces quedarse con los obreros de los subcontratistas, con el fin de hacer las terminaciones de las obras.   Así pues, le reclamó la cantidad adeudada más doscientos mil dólares ($200,000.00) en daños por práctica ilegal de retener pagos y por piratear a sus obreros.  Solicitó que el demandado preservara y conservara los documentos de los obreros que utiliza de otros contratistas, luego de que estos dejaban las obras por falta de solvencia.

Yates-Bird replicó con una *Solicitud de Desestimación*. Aseveró que las alegaciones de la demanda están relacionadas a un subcontrato suscrito por las partes.  Que en ese contrato se pactó que las disputas que surgieran como consecuencia de, o estuvieran relacionadas al subcontrato, se tenían que resolver por medio de arbitraje.  En particular, aludió a la parte denominada "Subcontract Terms and Conditions" del Subcontrato, en la página 10, párrafo 15, que disponía como sigue:

> 15. DISPUTES. This Subcontract is made in, and shall be governed by the laws of, Puerto Rico. Any claims or disputes arising out of or related to this Subcontract **shall be resolved by binding arbitration in accordance with the current and applicable rules**

**and procedures of the American Arbitration Association**, except if YATES-BIRD in good faith believes that any claim, dispute, or matter in controversy with Subcontractor also involves rights or liabilities of the Owner, Architect, or other third party, then, at YATES-BIRD'S sole election, Subcontractor agrees to resolve such issues in the same forum or proceeding, including arbitration, court, or administrative authority, which has jurisdiction over some or all claims, disputes, and matters in controversy involving the Owner, Architect, or other third party so as to promote economy and avoid inconsistent results.

YATES-BIRD and Subcontractor intend and agree that the foregoing dispute resolution provisions and rights of election given YATES-BIRD are not independent of or severable from the remainder of the Subcontract and that such provisions and election rights are supported by the consideration and mutuality of the Subcontract as a whole. The locale for any arbitration shall be Philadelphia, Mississippi unless YATES-BIRD agrees to designate another locale to facilitate joinder of parties, to consolidate claims, or for any other reason. Subcontractor and its surety shall be liable for all damages, costs, expenses, including attorneys' fees, incurred by YATESBIRD in enforcing the terms and conditions of this Subcontract.

Notwithstanding the existence of any dispute, claim, or matter in controversy, Subcontractor is obligated to and shall proceed diligently with complete and timely performance of this Subcontract.

Junto a su escrito, Yates-Bird incluyó el subcontrato suscrito con AZ Group.

El 19 de julio de 2023, AZ Group reaccionó con una *Oposición a Solicitud de Desestimación*. En general, alegó que el contrato quedó sin efecto cuando la parte demandada no pagó las facturas e incurrió en las prácticas ilegales de "piratear" a los empleados de la demandante. Agregó que referir el caso al arbitraje no dispone de todas las controversias legales incluidas en la demanda. Además, sostuvo que Yates-Bird no invocó la cláusula de arbitraje, dejando desprovisto a los demandantes de un remedio y que la alegación, para someter el asunto a arbitraje, resulta tardía. Junto al escrito incluyó varias comunicaciones que

las partes sostuvieron en febrero del año 2023; marzo del año 2023 y en octubre del año 2023.

El 21 de julio de 2023, Yates-Bates presentó una *Breve Réplica a Oposición a Solicitud de Desestimación*. Alegó que todas las comunicaciones incluidas en la Oposición son inadmisibles en evidencia, a tenor con la Regla 408 de las Reglas de Evidencia, 32 LPRA Ap. VI, R. 408. Señaló que, "quien activa la cláusula es aquella parte que tenga una reclamación o disputa. En ninguna parte de la cláusula se establece que quien único la puede activar es Yates-Bird, LLC."[1] Asimismo, sostuvo que el árbitro tiene la facultad de atender cualquier tipo de controversia.

Trabada la controversia, el 26 de octubre de 2023, el foro primario emitió una *Orden* en la que expresó que el asunto estaba sometido para la consideración del Tribunal.

Luego de otros trámites, innecesarios pormenorizar, el 10 de octubre de 2024, el Tribunal dictó *Sentencia* para desestimar la demanda. Fundamentó su determinación en la cláusula quince (15) del Subcontrato suscrito entre las partes y la fuerte política pública que rige a favor del arbitraje. Para ello, razonó lo siguiente:

> [L]as partes pactaron que cualquier reclamación o disputa (any claim or dispute) que surja o esté meramente relacionada con el Subcontrato (arising out of or related to this Subcontract) será resuelta a través del proceso de arbitraje. Las reclamaciones contenidas en la Demanda Enmendada no están excluidas de aquellas que se pudieran dirimir en un proceso de arbitraje. Claramente, las alegaciones de la parte demandante surgen o están relacionadas a las obligaciones de ambas, contenidas en el Subcontrato.

---

[1] Apéndice de la Apelación, pág. 49.

Insatisfecho, AZ Group solicitó reconsideración y Yates-Bird se opuso. El 16 de enero de 2025, el Tribunal declaró *No Ha Lugar* a la *Moción de Reconsideración*.

En desacuerdo, el 11 de febrero de 2025, AZ Group interpuso una Apelación en la cual alegó que incidió el Tribunal de Primera Instancia al:

> **Primero:** Al no dictaminar que una cláusula de arbitraje que solo puede invocar unilateralmente una sola parte es contraria a derecho y debe considerarse no puesta.
>
> **Segundo:** Al no determinar que en las circunstancias particulares de hechos del presente caso la parte apelada renunció a invocar la cláusula unilateral de arbitraje.

La parte apelada Yates-Bird presentó su posición al recurso. Con el beneficio de ambas comparecencias, revisamos.

**II.**

**A.**

En Puerto Rico rige el principio de la libertad de contratación, por tanto, las partes, "pueden acordar cualquier cláusula que no sea contraria a la ley, a la moral o al orden público." Artículo 1232 del Código Civil de 2020 (Código Civil), 31 LPRA sec. 9753. Cruz, López v. Casa Bella y otros, 2013 DPR 980, 995 (2024). Lo acordado en los contratos tiene fuerza de ley entre las partes, ante sus sucesores y ante terceros en la forma que dispone la ley. Artículo 1233 del Código Civil, 31 LPRA sec. 9755. 800 Ponce de León v. AIG, 205 DPR 163, 178 (2020). Los contratos se perfeccionan "desde que las partes manifiestan su consentimiento sobre el objeto y la causa, salvo en los casos en que se requiere el cumplimiento de una formalidad solemne o cuando se pacta una condición suspensiva." Artículo 1237 del

Código Civil, 31 LPRA 9771. <u>Cruz, López v. Casa Bella y otros</u>, supra.

Cuando los términos de un negocio jurídico bilateral son claros y no dejan duda sobre la intención de las partes, se estará al sentido literal de sus palabras. Artículo 354 del Código Civil, 31 LPRA sec. 6342. Es decir, se debe seguir y respetar la letra clara del contrato cuando la misma refleja inequívocamente la voluntad de las partes. <u>Cruz, López v. Casa Bella y otros</u>, supra, pág. 995; <u>SLG Irizarry v. SLG García</u>, 155 DPR 713, 726 (2001).

**B.**

Nuestro ordenamiento jurídico hace asequible que las partes en un contrato se obliguen a llevar ante un árbitro, mediante un procedimiento de arbitraje, las posibles controversias futuras relacionadas con su contrato. <u>SLG Méndez-Acevedo v. Nieves Rivera</u>, 179 DPR 359, 366 (2010).

Esa facultad surge principalmente de la Ley Núm. 376 de 8 de mayo de 1951, según enmendada, conocida como Ley de Arbitraje de Puerto Rico, (Ley 376), 32 LPRA sec. 3201 *et seq.* La Ley 376, *supra*, que fue derogada recientemente por la Ley 147 de 9 de agosto de 2024, la cual entró en vigor a los ciento ochenta (180) días de aprobada, es decir, en febrero de año 2025*.* No obstante, para el análisis de este caso, corresponde referirnos a la anterior Ley 376, *supra*, que era el estatuto vigente cuando el foro primario emitió la Sentencia aquí apelada.

El Artículo 1 de la Ley 376, *supra*, disponía como sigue:

Dos o más partes podrán convenir por escrito en someter a arbitraje, de conformidad con las disposiciones de esta Ley, **cualquier controversia que pudiera ser objeto de una acción existente entre ellos a la fecha del convenio de someter a arbitraje**; o podrán incluir en un convenio por escrito una disposición para el arreglo mediante arbitraje de cualquier controversia que en el futuro surgiere entre ellos de dicho acuerdo o en relación con el mismo. Tal

convenio será válido, exigible, e irrevocable salvo por los fundamentos que existieran en derecho para la revocación de cualquier convenio. (Énfasis nuestro).

32 LPRA sec. 3201.

Lo anterior es cónsono con el principio reiterado de que el arbitraje es una figura jurídica inherentemente contractual. Aponte Valentín et al. v. Pfizer Pharm, 208 DPR 263, 282 (2021); SLG Méndez-Acevedo v. Nieves Rivera, *supra*, pág. 367. Por tanto, se puede exigir cuando se ha pactado y ello consta por escrito. Constructora Estelar v. Aut. Edif. Pub., 183 DPR 1, 32 (2011); SLG Méndez-Acevedo v. Nieves Rivera, *supra*; Municipio Mayagüez v. Lebrón, 167 DPR 713, 720 (2006); UCPR v. Triangle Engineering Corp., 136 DPR 133, 144 (1994).

De tal manera, una de las controversias que las partes tienen el derecho a dirimir ante los tribunales, es aquella relacionada a la obligación de arbitrar. Artículo 4 de la Ley 376, 32 LPRA sec. 3204; SLG Méndez-Acevedo v. Nieves Rivera, *supra*, pág. 367. Para ello, se ha determinado que tal controversia incluye tres modalidades, a saber: (i) si existe un convenio de arbitraje; (ii) si ese convenio alcanza determinada controversia, y (iii) si el convenio alcanza una disputa sobre la duración o expiración del contrato. Aponte Valentín et al. v. Pfizer Pharm*, supra*, pág. 283; SLG Méndez-Acevedo v. Nieves Rivera, *supra*, pág. 368. Así pues, si se cuestiona directamente la validez de un acuerdo arbitral, corresponde a los tribunales dilucidar el asunto. Aponte Valentín et al. v. Pfizer Pharm*, supra;* SLG Méndez-Acevedo v. Nieves Rivera, *supra*, págs. 374–376.

En tales casos, el Tribunal Supremo ha reiterado que en Puerto Rico existe una fuerte política pública a favor del arbitraje y, que toda duda que pueda existir sobre si procede o no el

arbitraje, debe resolverse a favor de éste. Aponte Valentín et al. v. Pfizer Pharm, *supra*, pág. 282; SLG Méndez-Acevedo v. Nieves Rivera, *supra*, pág. 368; UCPR v. Triangle Engineering Corp., *supra*, págs. 141–142 y 143. Así pues, el Tribunal Supremo ha afirmado que, "ante un convenio de arbitraje lo prudencial es la abstención judicial, aunque esa intervención no esté vedada". SLG Méndez-Acevedo v. Nieves Rivera, *supra*, pág. 368; Municipio Mayagüez v. Lebrón, *supra*; UCPR v. Triangle Engineering Corp., *supra*, pág. 142. Por eso, una vez acordado el arbitraje, los tribunales carecen de discreción respecto a su eficacia y tienen que dar cumplimiento al arbitraje acordado. SLG Méndez-Acevedo v. Nieves Rivera, *supra*, Municipio Mayagüez v. Lebrón, *supra*, pág. 721. Así, el arbitraje constituye un medio más apropiado y deseable que los tribunales para la resolución de controversias que emanan de la relación contractual entre las partes, ya que es menos técnico, más flexible y menos oneroso. H.R., Inc. v. Vissepó & Diez Constr, 190 DPR 597, 606 (2014); Pérez v. Autoridad Fuentes Fluviales, 87 DPR 118, 127 (1963).

## C.

De otro lado, las partes que voluntariamente se someten a un procedimiento de arbitraje deben agotar los remedios contractuales antes de acudir a los tribunales, salvo que exista justa causa para obviarlos. H.R., Inc. v. Vissepó & Diez Constr, *supra*, pág. 606. Ahora bien, el Tribunal Supremo de Puerto Rico ha reconocido limitadas excepciones a la regla del cumplimiento previo de la obligación de arbitrar, entre ellas, cuando las partes renuncian voluntariamente a ese derecho. H.R., Inc. v. Vissepó & Diez Constr, *supra*. Aun así, el foro supremo destacó que, "[e]l peso de establecer tal renuncia recae sobre el interventor. Existe una política vigorosa en favor del arbitraje y una marcada

renuencia de los tribunales en concluir que se ha incurrido en una renuncia del derecho de arbitraje. Toda duda que pueda existir debe ser resuelta a favor del arbitraje". (Cita omitida) H.R., Inc. v. Vissepó & Diez Constr, *supra*, págs. 606-607*.*

Por otro lado, en ocasiones los tribunales debemos dejar sin efecto la cláusula de arbitraje, a pesar de ser válida, porque la parte que reclama el derecho a arbitraje ha actuado inconsistentemente con este reclamo. H.R., Inc. v. Vissepó & Diez Constr, *supra*, pág. 608. Ejemplo de ello es cuando un demandado, conociendo su derecho a arbitrar, decide ignorar este derecho y participar activamente en el litigio en los tribunales. H.R., Inc. v. Vissepó & Diez Constr, *supra*, págs. 608-609.

Ahora bien, el Tribunal Supremo de Puerto Rico ha reafirmado que las actuaciones de un peticionario no constituyen una renuncia de su derecho de arbitraje cuando en la primera alegación en el caso se invocó tal derecho y solicitó la suspensión de los procedimientos hasta que se procediese al arbitraje pactado en el contrato. Véase H.R., Inc. v. Vissepó & Diez Constr, *supra*, pág. 608*.* Así pues, cuando las partes pactan el arbitraje y este derecho se reclama en la primera alegación responsiva, lo que procede es detener los procedimientos ante el tribunal y someter el asunto a arbitraje. Íd*.*

En H.R., Inc. v. Vissepó & Diez Constr, *supra,* el Tribunal Supremo adoptó el escrutinio de la jurisdicción de Nueva York, en Tengtu Intl. Corp. v. Pak Kwan Cheung, 24 A.D.3d 170, 172 (2005), mediante la cual el Tribunal Supremo estatal consideró que "el factor determinante al momento de tomar la decisión es el tipo de participación del litigante en el proceso en corte." Allí ese tribunal hizo una distinción entre la litigación defensiva y la afirmativa. Si el litigante invoca el proceso judicial

defensivamente, no se entiende renunciado el derecho de arbitraje; por otra parte, si el litigante utiliza el sistema judicial de manera afirmativa, se infiere que se ha renunciado al derecho a arbitraje. Véase, H.R., Inc. v. Vissepó & Diez Constr, *supra*, pág. 611. Se entiende que se invoca afirmativamente el proceso judicial cuando el litigante solicita de forma fehaciente los beneficios de la litigación, actuación que resulta incompatible con su posterior reclamo de arbitraje. Id.

En cuanto a la litigación defensiva y afirmativa, el Tribunal Supremo, aludió a lo siguiente:

> Por otra parte, se entiende que se utiliza defensivamente el proceso judicial **cuando el demandado solo interactúa con el sistema judicial para atender una acción en su contra**. A modo de ejemplo, y sin pretender hacer un listado exhaustivo, se considera que el demandado actúa defensivamente siempre que contesta los requerimientos del demandante, sin cursar requerimiento alguno por su parte, o cuando simplemente da estricto cumplimiento a las órdenes del tribunal. (Énfasis nuestro).
> H.R., Inc. v. Vissepó & Diez Constr, *supra,* pág. 612*.*

Por otro lado, como regla general, cuando la cláusula de arbitraje es lo suficientemente amplia, el árbitro tiene la autoridad de adjudicar prácticamente todo tipo de controversia legal. SLG Méndez-Acevedo v. Nieves Rivera, supra, pág. 372, (2010); World Films, Inc. v. Paramount Pictures Corp., 125 DPR 352, 362 (1990).

## III.

AZ Group alega que el apelado era quien tenía que acudir a la cláusula de arbitraje, y al no hacerlo, renunció a esa vía. Indica, además, que la presente causa no se puede dilucidar por el mecanismo de arbitraje, pues en la demanda no solo alega falta de pago conforme al contrato, sino, además, prácticas ilegales y abusivas hacia un subcontratista.

La parte apelada sostuvo, en síntesis, que la Sección quince (15) del subcontrato, contiene una cláusula amplia donde las partes pactaron específicamente que todas las reclamaciones o disputas que surgieran como consecuencia de, o estuvieran relacionadas al subcontrato, se tienen que resolver mediante arbitraje. Señaló que las causas de acción de la demanda emanan o están relacionadas al subcontrato. Indicó que, en virtud de esa cláusula, fue que presentó la solicitud de desestimación. Además, que toda duda que pueda existir debe ser resuelta a favor del arbitraje, según dispone la jurisprudencia aplicable. Sostuvo que cuando la cláusula de arbitraje es amplia, el árbitro tiene la autoridad de adjudicar prácticamente todo tipo de controversia legal. Resaltó que quien activa la cláusula de arbitraje es aquella parte que tengan una reclamación o disputa. Agregó que la única excepción a ello es cuando se trate de reclamaciones que involucre controversias con el dueño, el arquitecto o terceros, en cuyo caso tampoco conllevaría la nulidad de la cláusula de arbitraje. Adujo que desde su primera comparecencia como demandado, invocó la aplicación de la cláusula de arbitraje, por lo cual, no ha renunciado a ese derecho, como lo pretende el apelante.

Evaluamos.

El subcontrato entre las partes incluyó la sección de *Subcontract Terms and Conditions*, que en su inciso quince (15) expresa así:

> 15. DISPUTES. This Subcontract is made in, and shall be governed by the laws of, Puerto Rico. Any claims or disputes arising out of or related to this Subcontract **shall be resolved by binding arbitration in accordance with the current and applicable rules and procedures of the American Arbitration Association**, except if YATES-BIRD in good faith believes that any claim, dispute, or matter in controversy with Subcontractor also involves rights or liabilities of the Owner, Architect, or other third party, then, at YATES-BIRD'S sole election, Subcontractor

agrees to resolve such issues in the same forum or proceeding, including arbitration, court, or administrative authority, which has jurisdiction over some or all claims, disputes, and matters in controversy involving the Owner, Architect, or other third party so as to promote economy and avoid inconsistent results.

YATES-BIRD and Subcontractor intend and agree that the foregoing dispute resolution provisions and rights of election given YATES-BIRD are not independent of or severable from the remainder of the Subcontract and that such provisions and election rights are supported by the consideration and mutuality of the Subcontract as a whole. The locale for any arbitration shall be Philadelphia, Mississippi unless YATES-BIRD agrees to designate another locale to facilitate joinder of parties, to consolidate claims, or for any other reason. Subcontractor and its surety shall be liable for all damages, costs, expenses, including attorneys' fees, incurred by YATESBIRD in enforcing the terms and conditions of this Subcontract.

Notwithstanding the existence of any dispute, claim, or matter in controversy, Subcontractor is obligated to and shall proceed diligently with complete and timely performance of this Subcontract.

El referido acuerdo establece claramente que los reclamos y disputas, que surjan, o estén relacionados al contrato, sean resueltos bajo el método de arbitraje. Esa cláusula es una generalizada para que cualquier parte del contrato la active. Es decir, podía recurrir a esta cláusula, tanto el subcontratista AZ Group como Yates-Bird. Ahora bien, la cláusula quince (15) también contiene una excepción, pero es cuando Yates-Bird entienda de buena fe que cualquier reclamo del subcontratista, también involucre derechos o responsabilidades del dueño, el arquitecto o una tercera parte, entonces a la única elección de Yates-Bird, el subcontratista está de acuerdo en resolver esos asuntos en el mismo foro o proceder, incluyendo arbitrar, para promover la economía y evitar resultados inconsistentes.

No obstante, ese último escenario, de la excepción, no es el que se plantea en la demanda de epígrafe. Aquí el subcontratista AZ Group solamente interpuso una acción contra Yates-Bird en

atención a las obligaciones contractuales pactadas y las que se pueden derivar de esta acción. Esto abarca las reclamaciones en torno al uso de los empleados de AZ Group. En cambio, de la reclamación, no surgen alegaciones contra el dueño de la obra, el arquitecto o algún tercero. De manera que, no es aplicable la excepción. Ante ello, cualquiera de las partes podía acudir a la cláusula de arbitraje, a los fines de dilucidar allí sus reclamos.

Aun cuando el demandante AZ Group no activó la referida cláusula de arbitraje, el demandado Yates-Bird sí lo hizo. Esto ocurrió en la primera alegación que Yates-Bird presentó en el tribunal. En esta, respondió a la acción incoada en su contra y le solicitó al Tribunal que desestimara la acción porque el foro adecuado era el arbitraje, según pactado.

El Tribunal, al evaluar que el pacto entre las partes que disponía que las controversias entre ellas se dilucidaran por la vía del arbitraje, decretó desestimar la acción. Esta decisión fue correcta, debidamente fundamentada en el pacto entre las partes y en el derecho que rige esta materia. Por todo lo cual, en apelación, confirmamos esta decisión.

**IV.**

Por las razones antes expresadas, confirmamos la Sentencia apelada.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones