Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| GERARDO RIVERA LEZCANO<br><br>Parte Apelante<br><br>v.<br><br>PROSOLAR PUERTO RICO, LLC y OTROS<br><br>Parte Apelada | TA2026AP00203 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Caso Núm. SJ2025CV08135<br><br>Sobre: Incumplimiento de Contrato, Daños y Cobro de Dinero |
|---|---|---|

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, el Juez Rodríguez Flores y la Jueza Díaz Rivera

Rodríguez Flores, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 15 de abril de 2026.

Comparece ante nos, el Sr. Gerardo Rivera Lezcano (señor Rivera Lezcano o apelante) mediante recurso de *apelación* y solicita que revisemos la *Sentencia* emitida el 26 de enero de 2026 por el Tribunal de Primera Instancia (TPI), Sala Superior de Carolina.[1] Mediante el referido dictamen, el foro primario desestimó la causa de acción instada contra PROSOLAR PUERTO RICO, LLC (PROSOLAR o apelada).

Examinado el escrito a la luz del derecho aplicable y por los fundamentos que expondremos a continuación, revocamos la *Sentencia* apelada.

**I.**

El 11 de septiembre de 2025, el señor Rivera Lezcano incoó una *Demanda* sobre incumplimiento de contrato, daños y cobro de dinero contra PROSOLAR.[2]

---

[1] *Apelación*, SUMAC-TA del recurso TA2026AP00203, Entrada 1.
[2] Véase, expediente electrónico del caso SJ2025CV08135 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC), Entrada 1, *Demanda*.

Según sus alegaciones, mantuvo una relación contractual como contratista independiente con PROSOLAR, desempeñándose principalmente en el área de ventas, hasta que culminó sus labores el 5 de enero de 2025. Sostuvo que, al inicio de la relación contractual, firmó un contrato, pero este nunca le fue entregado. Asimismo, señaló que durante el transcurso del año 2024, PROSOLAR modificó unilateralmente el sistema de cálculo de sus comisiones, incrementando el umbral de la bonificación acumulada (*commission bucket*), ello sin obtener previamente su consentimiento expreso ni la firma de un nuevo contrato o addendum que validara legalmente el cambio.

Así, alegó que PROSOLAR incumplió sus obligaciones contractuales al modificar unilateralmente los términos de compensación y al negarse a pagar las comisiones legítimamente devengadas por el trabajo realizado. Además, sostuvo que dicha conducta atentó contra el principio de buena fe que rige toda relación contractual. Por tal razón, solicitó al foro primario que ordenara a PROSOLAR pagar las siguientes sumas: $10,000.00 por concepto de comisiones adeudadas; $10,000.00 por concepto de la penalidad estatutaria dispuesta por ley y; una suma no menor de $10,000.00 por concepto de los daños y perjuicios ocasionados, entre otras partidas.

Luego de varios trámites procesales, el 13 de noviembre de 2025, PROSOLAR presentó su *Contestación a Demanda.*[3] En esta, negó la mayoría de las alegaciones y admitió otras. Como defensa afirmativa, incluyó, entre otras cosas, que la causa de acción debía ser desestimada, ya que las partes habían acordado que la interpretación y cumplimiento del contrato se resolvería mediante arbitraje. A su vez, reconvino alegando que el señor Rivera Lezcano

---

[3] *Íd.,* Entrada 10, *Contestación a Demanda.*

incumplió su contrato como vendedor al intentar transferir una venta a una compañía competidora, lo que provocó la cancelación del caso por parte de PROSOLAR y que se generara un *charge back* contra la reserva del demandante, adeudándole este la cantidad de $375.47.

Oportunamente, el 18 de noviembre de 2025, el señor Rivera Lezcano presentó su *Contestación a Reconvención.*[4] En su escrito negó las alegaciones en su contra y afirmó que la venta a la cual hizo referencia PROSOLAR fue gestionada, trabajada y concretada exitosamente por su persona para beneficio de la compañía. Asimismo, manifestó que cualquier *charge back* generado en su contra era improcedente, nulo e ilegal, ya que la venta fue válida y la comisión debidamente devengada. Además, señaló que existía controversia sobre la autenticidad del contrato presentado por PROSOLAR, pues nunca le fue entregado y, según su información y/o creencia, fue modificado unilateralmente luego de su firma. Conforme a ello, reiteró que PROSOLAR retuvo ilegalmente más de $10,000.00 en comisiones y penalidades, por lo que era quien le adeudaba dinero por su incumplimiento contractual.

Posteriormente, el 19 de enero de 2026, PROSOLAR instó una *Moción de Desestimación.*[5] En esta, aseveró que ambas partes suscribieron un contrato el 29 de abril de 2023 titulado *"Acuerdo y Contrato de Vendedor Externo"*. Manifestó que, el referido contrato contenía una cláusula de arbitraje, mediante la cual acordaron que cualquier controversia derivada del mismo sería ventilada a través de dicho mecanismo alterno. Por ello, concluyó que el tribunal carecía de jurisdicción sobre la materia y que, en consecuencia, procedía la desestimación de la demanda.

---

[4] *Íd.,* Entrada 12, *Contestación a Reconvención.*
[5] *Íd.,* Entrada 17, *Moción de Desestimación.*

En respuesta, el 22 de enero de 2026, el señor Rivera Lezcano presentó su *Oposición a Moción de Desestimación.*[6] Puntualizó que el contrato disponía que, efectivo el 1 de abril de 2023, proveería sus servicios por el período de un año, sujeto a renovación por escrito. Indicó, además, que el contrato establecía que ninguna enmienda, cambio o modificación al mismo sería válida, salvo constara por escrito y estuviese firmada por ambas partes. Argumentó que el planteamiento medular de PROSOLAR se basaba en un contrato cuya vigencia expiró en abril de 2024, mientras que la controversia del pleito surgió por actuaciones ocurridas entre 2024 y enero de 2025, es decir, luego de expirado el contrato original. Por lo que, al no existir renovación escrita, addendum de extensión, ni acuerdo firmado que prolongara la vigencia del convenio arbitral, no había base para compeler al arbitraje por reclamaciones surgidas fuera del término contractual.

Evaluados los escritos de las partes, el 26 de enero de 2026, el foro primario emitió la *Sentencia* aquí apelada.[7] Mediante el referido dictamen, el tribunal declaró *ha lugar* la solicitud de desestimación instada por PROSOLAR. El foro apelado razonó que el contrato suscrito entre las partes estableció el arbitraje como mecanismo primario para atender cualquier controversia relacionada con el mismo, por lo cual carecía de jurisdicción sobre la materia. A su vez, reservó jurisdicción para decretar la reapertura del pleito en caso de que, una vez adjudicada la reclamación en arbitraje, alguna de las partes solicitara la continuación de los procedimientos ante el tribunal.

Inconforme, el 25 de febrero de 2026, el señor Rivera Lazcano compareció ante este foro apelativo señalando la comisión de los siguientes errores:

---

[6] *Íd.,* Entrada 18, *Oposición a Moción de Desestimación.*
[7] *Íd.,* Entrada 19, *Sentencia.*

>   Erró el Tribunal de Primera Instancia al imponer la cláusula de arbitraje sin resolver adecuadamente, y sin vista evidenciaria cuando era necesaria, controversias sustanciales sobre la existencia, vigencia, voluntariedad y alcance del supuesto acuerdo arbitral, pese a los planteamientos específicos de Rivera.
>
>   Erró el Tribunal de Primera Instancia al interpretar e imponer la cláusula arbitral de forma automática y expansiva, sin aplicar las reglas de interpretación de contratos de adhesión, y sin ponderar su ambigüedad y unilateralidad.

Tras un estudio detenido del expediente y transcurrido el término reglamentario sin que la parte apelada hubiese presentado su alegato en oposición, damos por perfeccionado el recurso, sin el beneficio de su comparecencia.[8]

**II.**

**A.**

La jurisdicción es el poder o la autoridad que tiene un tribunal para considerar y decidir casos o controversias.[9] Como norma general, los tribunales de Puerto Rico, por ser de jurisdicción general, pueden entender cualquier materia sobre la cual no se les haya privado de jurisdicción.[10] Así, la jurisdicción sobre la materia se refiere a la capacidad que tiene un tribunal para atender y resolver controversias respecto a determinado aspecto legal.[11]

Las partes no le pueden conferir jurisdicción sobre la materia a los tribunales, ni estos pueden abrogársela *motu proprio*. Sólo el Estado, a través de sus leyes, puede otorgar o privar de jurisdicción sobre la materia a un tribunal.[12] Por lo tanto, una vez cuestionada, el tribunal debe examinar y evaluar con rigurosidad tal señalamiento, pues el mismo incide directamente sobre su poder

---

[8] Véase, Regla 7(B)(5) del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, 215 DPR __ (2025).

[9] *Pueblo v. Rivera Ortiz*, 209 DPR 402, 414 (2022); *Ruiz Camilo v. Trafon Group, Inc.*, 200 DPR 254, 267 (2018).

[10] *Rodríguez Rivera v. De León Otaño*, 191 DPR 700, 708 (2014).

[11] *Íd.*

[12] *Íd.*

para adjudicar.[13] Siendo la falta de jurisdicción insubsanable, procede la desestimación del pleito, toda vez que cualquier sentencia dictada sin jurisdicción es nula en derecho.[14]

**B.**

Mediante el arbitraje, las partes contratantes voluntariamente acuerdan someter y presentar sus controversias ante un tercero neutral que está investido con la facultad de rendir una decisión.[15] Es por ello que el arbitraje es una figura jurídica inherentemente contractual y es solamente exigible cuando las partes así lo hayan pactado.[16]

En este sentido, en Puerto Rico existe una vigorosa política pública a favor del arbitraje. Esta política se recoge en la *Ley de Arbitraje de Puerto Rico*, Ley Núm. 147 de 9 de agosto de 2024[17], y establece que dos o más partes podrán pactar por escrito para someter a arbitraje cualquier controversia que sea objeto de una acción existente entre ellas a la fecha del convenio, o cualquier controversia que pudiese surgir entre las partes suscribientes en el futuro.[18] Ese convenio de arbitraje será válido, exigible e irrevocable, excepto por las causas dispuestas en ley para la nulidad de los contratos.[19]

El Tribunal Supremo ha expresado consistentemente que las partes que voluntariamente se someten a un procedimiento de arbitraje deben agotar los remedios contractuales antes de acudir a los tribunales, salvo que exista justa causa para obviarlo. De esta forma, las partes acuerdan voluntariamente limitar la jurisdicción sobre su persona de los tribunales, para dar paso al proceso de

---

[13] *Shell v. Srio. Hacienda*, 187 DPR 109, 123 (2012).
[14] *Íd.*
[15] *Hope Tucker v. Money Group, LLC*, 217 DPR ___ (2026), 2026 TSPR 9 (resuelto el 27 de enero de 2026); *Aquino González v. AEELA*, 182 DPR 1, 19 (2011).
[16] *Hope Tucker v. Money Group, LLC*, supra; *HR, Inc. v. Vissepó & Diez Constr.*, 190 DPR 597, 605 (2014).
[17] 32 LPRA sec. 3230 *et seq.*
[18] Art. 1.04 de la Ley Núm. 147-2024, 32 LPRA sec. 3230c.
[19] Art. 2.03 de la Ley Núm. 147-2024, 32 LPRA 3231b.

arbitraje. Así, el arbitraje constituye un medio más apropiado y deseable que los tribunales para la resolución de controversias que emanan de la relación contractual entre las partes, ya que es menos técnico, más flexible y menos oneroso.[20]

Por consiguiente, cuando los contratantes pactan utilizar el arbitraje como método para resolver las controversias, "se crea un foro sustituto a los tribunales de justicia, cuya interpretación merece gran deferencia".[21] Una vez las partes establecen esta obligación mediante cláusula contractual, se establece una presunción de arbitrabilidad a su favor.[22] La aludida presunción contempla la intención de que se satisfagan los acuerdos de arbitraje negociados por las partes como cualquier otro contrato.[23] En virtud de ello, los tribunales carecen de discreción y tienen que dar cumplimiento al arbitraje acordado.[24]

Ahora bien, aun cuando en Puerto Rico existe una fuerte política pública a favor del arbitraje, este mecanismo se utilizará solo si las partes lo han pactado así y en la forma como lo hayan pactado.[25] Así, una de las controversias que las partes tienen el derecho a dirimir ante los tribunales es aquella relacionada a la obligación de arbitrar.[26] **Es decir, si se cuestiona directamente la validez de un acuerdo arbitral, corresponde a los tribunales dilucidar el asunto**.[27] En ese menester judicial, los tribunales deben determinar si existe un convenio de arbitraje; si ese convenio cobija determinada controversia, y si el convenio alcanza una

---

[20] *HR, Inc. v. Vissepó & Diez Constr.*, supra, pág. 606.
[21] *Depto. Educ. v. Díaz Maldonado*, 183 DPR 315, 325 (2011).
[22] *Paine Webber v. Soc. de Gananciales,* 151 DPR 307, 312 (2000); *World Films, Inc. v. Paramount Pict. Corp.,* 125 DPR 352, 361-362 (1990).
[23] *Paine Webber v. Soc. de Gananciales,* supra, pág. 312.
[24] *Mun. de Mayagüez v. Lebrón*, 167 DPR 713, 721 (2006); *Paine Webber v. Soc. de Gananciales, supra*, págs. 311-312; *World Films, Inc. v. Paramount Pict. Corp., supra*, págs. 357-358.
[25] *Aponte Valentín v. Pfizer Pharmaceuticals, LLC.*, 208 DPR 263, 282 (2021).
[26] *SLG Méndez-Acevedo v. Nieves Rivera*, 179 DPR 359, 367 (2010).
[27] *Aponte Valentín v. Pfizer Pharmaceuticals, LLC.*, supra, pág. 283. (Énfasis nuestro).

disputa sobre la duración o expiración del contrato.[28]  Esto se debe a que, siendo el arbitraje un asunto contractual, no se puede obligar a una parte a someter a arbitraje una disputa que no ha acordado someter.[29]

## III.

Nos corresponde determinar si el foro primario incidió al desestimar el pleito de epígrafe al concluir que carecía de jurisdicción sobre la materia. *Veamos.*

Por estar estrechamente relacionados los errores señalados en el recurso de apelación ante nuestra consideración, procedemos a discutirlos en conjunto. En síntesis, la parte apelante sostiene que el foro primario erró al imponer la cláusula de arbitraje sin resolver adecuadamente, y sin celebrar una vista evidenciaria cuando era necesaria, controversias sustanciales sobre la existencia, vigencia, voluntariedad y alcance del alegado acuerdo arbitral. A su vez, arguye que incidió el tribunal al interpretar e imponer la cláusula arbitral de forma automática y expansiva, sin aplicar las normas de interpretación de contratos de adhesión ni ponderar su posible ambigüedad y unilateralidad.

En virtud de ello, plantea que el expediente refleja controversias medulares sobre la vigencia y aplicabilidad del convenio arbitral invocado, toda vez que el contrato suscrito contemplaba un término de duración fijo de un año, esto es, desde abril de 2023 hasta abril de 2024. No obstante, la controversia del pleito surgió como consecuencia de actuaciones de PROSOLAR durante el año 2024 y culminó con la terminación de la relación el 5 de enero de 2025. Reafirma que, en ausencia de evidencia de renovación escrita, no existe base para compeler al arbitraje respecto a reclamaciones ocurridas fuera del término pactado.

---

[28] *Íd.*, pág. 283; *SLG Méndez-Acevedo v. Nieves Rivera,* supra, pág. 367.
[29] *Mun. de Ponce v. Gobernador,* 136 DPR 776, 783 esc. 1 (1994).

Asimismo, añade que, aun si se asumiera que el contrato es aplicable o vigente, la cláusula de arbitraje invocada no constituye una renuncia clara, inequívoca y exclusiva al foro judicial, toda vez que dispone que la validez e interpretación del acuerdo "se regirá por las leyes y los tribunales del Estado Libre Asociado de Puerto Rico". A su juicio, dicha expresión, contenida en el mismo texto en que se invoca el arbitraje como mecanismo principal, genera una ambigüedad sustancial en cuanto a la exclusividad del arbitraje. Por lo que, al tratarse de un contrato de adhesión redactado por la parte apelada, afirma que la ambigüedad debe interpretarse en contra del redactor y a favor de preservar su acceso al foro judicial.

De un análisis detenido del expediente se desprende que, ante el foro primario existía una controversia real y sustancial en torno a cuál era el acuerdo contractual vigente entre las partes al momento de ocurrir los hechos que dieron lugar a la *demanda* de epígrafe. Específicamente, estaba en controversia si la relación entre estos continuaba regida por el contrato suscrito inicialmente, y por ende, por su cláusula de arbitraje, o si, por el contrario, la relación se desarrolló posteriormente al margen del referido contrato, sin que existiera un acuerdo válido y vigente que obligara a la parte apelante a someter sus reclamaciones al foro arbitral.

En el presente caso, la parte apelante no se limitó a oponerse de manera general a la solicitud de arbitraje, sino que planteó de forma específica y fundamentada varias controversias materiales de hechos. En particular, alegó que el contrato presentado por la parte apelada nunca le fue entregado, cuestionó su autenticidad y sostuvo que el mismo fue modificado unilateralmente con posterioridad a su firma. Asimismo, argumentó que este tenía una vigencia definida de un año, la cual expiró en abril de 2024, y que las reclamaciones del pleito surgieron luego de dicha fecha. Además, añadió que no existió renovación por escrito, addendum ni acuerdo firmado que

extendiera la vigencia del contrato o de la cláusula arbitral. De ser correctas dichas alegaciones, la cláusula de arbitraje en cuestión no sería exigible para regir controversias surgidas fuera del término contractual.

Así pues, las controversias planteadas por la parte apelante respecto a la falta de entrega del contrato, su autenticidad, la modificación unilateral de sus términos y la ausencia de renovación por escrito, envuelven elementos de intención, consentimiento y credibilidad que no pueden ser adjudicados sin la adecuada presentación y evaluación de la prueba. Se trata, por lo tanto, de controversias que requieren la celebración de una vista evidenciaria en la que el juzgador pueda aquilatar la prueba testifical y documental, así como adjudicar la credibilidad que esta le merezca.

Como se observa, dichas controversias resultaban medulares y debían ser resueltas antes de adjudicar el planteamiento jurisdiccional levantado por la parte apelada. Ello es así, pues la determinación de si procede compeler a arbitraje depende, necesariamente, de la existencia de un acuerdo válido, vigente y aplicable a la controversia en cuestión. En ausencia de tal determinación, no procedía imponer la cláusula de arbitraje de forma automática, como lo hizo el foro apelado. Tal proceder resulta incompatible con el principio fundamental de que el arbitraje descansa en el consentimiento de las partes y que su imposición requiere la existencia de un acuerdo claro, válido y exigible. Máxime cuando ello implica la renuncia al foro judicial, lo cual no puede sostenerse a base de un contrato cuya vigencia está razonablemente cuestionada.

No habiéndose celebrado una vista evidenciaria para determinar cuál era el acuerdo contractual vigente entre las partes, si alguno, al momento de los hechos que originaron la presente controversia, nos resulta forzoso concluir que el foro de instancia

actuó precipitadamente al desestimar la demanda. En esta etapa de los procedimientos, y tomando como ciertas las alegaciones bien formuladas de la demanda, no procedía la desestimación del pleito, toda vez que existen versiones encontradas sobre la naturaleza y alcance de la relación contractual entre las partes.

Por tanto, será únicamente luego de que el foro primario reciba y evalúe la prueba pertinente respecto a la existencia, validez, vigencia y alcance del acuerdo contractual alegado, que estará en posición de determinar si la cláusula de arbitraje invocada es aplicable a la controversia de autos y, en consecuencia, si procede o no remitir el asunto a dicho mecanismo alterno.

Así las cosas, colegimos que procede revocar la *Sentencia* apelada y devolver el caso al foro de instancia para la celebración de una vista evidenciaria en la que se diluciden las controversias planteadas, las cuales inciden directamente sobre la autoridad del tribunal para atender los méritos del caso.

**IV.**

Por los fundamentos antes expuestos, revocamos la *Sentencia* emitida el 26 de enero de 2026 por el Tribunal de Primera Instancia, Sala Superior de Carolina. Se devuelve el caso al foro sentenciador para la celebración de una vista evidenciaria en la que se diluciden las controversias planteadas, acorde con lo aquí resuelto.

Notifíquese.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones